**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA N. YOUNG, on behalf of herself and others similarly situated,** | ) ) ) | |
| **Plaintiff,** | ) ) | Case No. 05 C 7314 |
| v. | ) ) ) | |
| **VERIZON'S BELL ATLANTIC CASH BALANCE PLAN, formerly known as Bell Atlantic Cash Balance Plan, formerly known as Bell Atlantic Management Pension Plan, and VERIZON COMMUNICATIONS INC., as successor in interest to Bell Atlantic Corporation,** | ) ) ) ) ) ) ) ) ) | **Magistrate Judge Morton Denlow** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This is an ERISA class action suit in which Plaintiff Cynthia N. Young ("Plaintiff") alleges that Defendants Verizon's Bell Atlantic Cash Balance Plan and Verizon Communications Inc. (collectively "Defendants") calculated her pension benefits, and those of others similarly situated, using an improper formula. Before the Court is Defendants' motion to quash discovery and for a protective order. The discovery relates to Defendants' affirmative defenses and Plaintiff's allegations that Defendants acted as administrators of the Plan under a conflict of interest. The Court held oral argument on July 24, 2007. For the following reasons, the Court denies in part and grants in part Defendants' motion.

## I. BACKGROUND

The history and facts of this case are extensive and, given the current procedural posture of the case, not yet fully before the Court. The Court provides as background only what is necessary to decide the present motion.

### A. Plan History and Provisions

The plan at issue in this case began as a "traditional" defined-benefit pension plan known as the Bell Atlantic Management Pension Plan ("BAMPP"). On December 31, 1995, Bell Atlantic converted the BAMPP into the Bell Atlantic Cash Balance Plan ("1995 Cash Balance Plan"). A cash balance plan is a type of defined-benefit plan in which the benefit is based on pay and interest credits. *See* U.S. Dept. of Labor, *Types of Retirement Plans*, *available at* http://www.dol.gov/dol/topic/retirement/typesofplans.htm (last visited July 25, 2007). The 1995 Cash Balance Plan was restated in 1997 ("1997 Cash Balance Plan") and again in 1998 ("1998 Cash Balance Plan").

Plaintiff relies on two provisions of the Plan[1] for her claim to additional benefits. As stated in the 1997 Cash Balance Plan, the first provision ("transition factor provision") reads:

> 16.5.1(a)(2)  Not Eligible for Service Pension
>
> In the case of a Participant who is not eligible for a Service Pension under the 1995 BAMPP Plan as of the Transition Date, the amount described in this paragraph (2) is the product of multiplying (A) the Participant's applicable Transition Factor described in Table 1 of this Section, *times* (B) the lump-sum cashout value of the Accrued Benefit payable at age 65 under

---

[1]The Court uses the term "Plan" where the particular restatement of the plan is irrelevant.

>the 1995 BAMPP Plan, determined as if the Participant had a Severance From Service Date on December 31, 1995, based on Compensation through December 31, 1995, multiplied by the applicable transition factor described in Table 1 of this Section. For a 1995 Former Active Participant, the date on which the individual ceased to be an Eligible Employee shall be substituted for December 31, 1995 in the last phrase of the previous sentence.

PX B (italics in original).[2] Plaintiff argues that this provision required the plan administrator to multiply Plaintiff's lump-sum cashout value times the transition factor twice.

The second provision on which Plaintiff relies relates to the discount rate applied to calculate the present value of Plaintiff's accrued benefits ("discount rate provision"). Plaintiff alleges that Verizon used a 120% discount rate instead of a 100% discount rate in violation of the Plan terms. Plaintiff seeks discovery specific to Defendants' denial of her claim based on the transition factor provision, but not the decision as to the discount rate provision.

**B.    Procedural History**

Plaintiff initially sought additional benefits based on the discount rate provision. The Verizon Claims Review Unit ("Review Unit"), and later the Verizon Claims Review Committee ("Review Committee"), denied Plaintiff's claim. Plaintiff later claimed additional benefits based on the transition factor provision, and was denied by the Review Unit. Plaintiff appealed to the Review Committee.

---

[2]Plaintiff's exhibits are abbreviated PX; Defendants' exhibits are DX.

On April 5, 2007, the Review Committee denied Plaintiff's request for additional benefits based on the transition factor provision. The Review Committee acknowledged that "Section 16.5.1(a)(2) . . . provides for application of the transition factor twice," but characterized the second reference to the transition factor as a "drafting error," noting that "there are other plan documents and other plan provisions that provide for only a single application of the factor." DX 12. The other plan documents cited by the Review Committee are resolutions of the Bell Atlantic Benefits Committee and the Board of Directors Human Resources Committee ("HRC"), a provision of the Plan applicable to a different class of participants, and later restatements of the Plan, all of which require application of the transition factor only once. *Id.*

The Plan grants discretion to the Review Committee "to make findings of fact; to interpret the Plan and resolve ambiguities therein; to make factual determinations; to determine whether a claimant is eligible for benefits; to decide the amount, form, and timing of benefits; and to resolve any other matter under the Plan which is raised by the claimant or identified by the respective committee." DX 14. Characterizing the discrepancies between the cited provisions and the language of Section 16.5.1(a)(2) as an ambiguity that the Plan authorized the Review Committee to resolve, the Review Committee concluded that it could refer to additional documents to resolve the discrepancies. *Id.* Those documents included a memo sent to Bell Atlantic by its human resources consultant, materials provided to the HRC, materials sent to Bell Atlantic managers, a brochure sent to employees, opening

account balance estimates sent to employees in November 1995, an actuarial report, and plan records indicating the opening account balances for all employees subject to section 16.5.1(a)(2), all of which indicate that the transition factor would be applied only once. *Id.* The Review Committee concluded that inclusion of the second reference to the transition factor was a "mistake" that "appears to have resulted from a restructuring of Sections 16.5.1(a)(1) and (2)" in which "the draftsperson neglected to remove the reference to the transition factor at the end of Section 16.5.1(a)(2) . . . after adding a reference at the beginning of that Section." *Id.*

Following the Review Committee's denial of additional benefits based on the transition factor provision, Plaintiff amended her complaint. In answering the second amended complaint, Defendants raised the following "Affirmative and Other Defenses," among others not presently relevant:

> First Defense: Section 16.5.1(a)(2) of both the 1996 Bell Atlantic Cash Balance Plan and the 1997 Bell Atlantic Cash Balance Plan contains a clear scrivener's error regarding the second reference to multiplication by the applicable Transition Factor, and the Verizon Claims Review Committee reasonably and permissibly interpreted the Plans in light of this clear scrivener's error.
>
> Second Defense: In the alternative, the second reference to multiplication by the applicable Transition Factor . . . creates an intrinsic ambiguity in the Plans, and the Verizon Claims Review Committee reasonably and permissibly exercised its discretionary authority to resolve the intrinsic ambiguity.
>
> Third Defense: In the alternative, the second reference to multiplication by the applicable Transition Factor . . . creates an

> extrinsic ambiguity in the Plans, and the Verizon Claims Review Committee reasonably and permissibly exercised its discretionary authority to resolve the extrinsic ambiguity.
>
> Fourth Defense: In the alternative, because [of the] clear scrivener's error, Defendants are entitled to reformation of [section] 16.5.1(a)(2) of those Plans to eliminate the second reference to multiplication by the applicable Transition Factor.
>
> Fifth Defense: In the alternative, the second reference to multiplication by the applicable Transition Factor . . . is voidable under the doctrine of mutual mistake.
>
> Sixth Defense: In the alternative, neither Bell Atlantic nor its delegates approved or authorized the second reference to multiplication by the applicable Transition Factor . . . .

Def. Answer (May 14, 2007).

**C.     Discovery Dispute**

In response to Defendants' Answer, Plaintiff served a number of discovery requests on Defendants, as well as subpoenas on the law firm of Morgan Lewis & Bockius ("Morgan Lewis") and Mercer Human Resources Consulting, Inc. ("Mercer"). The discovery served on Defendants, in addition to requesting "[a]ll documents relating to the planning, drafting, and implementation of the conversion of the Bell Atlantic Management Pension Plan to the Bell Atlantic Cash Balance Plan" and "[a]ll documents relating to the changes in Section 16.5.1 in the 1998 Bell Atlantic Cash Balance Plan from the previous iterations in the Bell Atlantic Cash Balance Plan," seeks such items as "[a]ll documents related to the pension benefits for management employees of Bell Atlantic's competitors," and "[a]ll documents showing the names, addresses, telephone numbers, e-mail addresses, job title, education,

work history, opening balances as determined by Bell Atlantic pursuant to Section 16.5.1(a)(1) or (2)." DX 1. Plaintiff's interrogatories seek similar information. The subpoenas served on Morgan Lewis and Mercer seek all communications and documents relating to the Bell Atlantic Management Pension Plan and/or the Bell Atlantic Cash Balance Plan, as well as related billing records. DX 2.

Defendants argue that the ultimate decision in this case is whether the Review Committee's decision was arbitrary and capricious, and under that review standard, discovery is inappropriate. Defendants further argue that while discovery related to conflicts of interest by plan administrators is permitted in arbitrary and capricious review cases, Plaintiff has not satisfied the prerequisites for conflicts discovery, and her requests are overly broad. Finally, Defendants argue that discovery is premature unless and until the Court rejects the Review Committee's plan interpretation.

In response, Plaintiff argues that plan administrators lack the authority to treat plan language as scrivener's error, and that the only appropriate venue to rectify a scrivener's error is before the Court under *de novo* treatment, subject to Defendants meeting a clear and convincing burden of proof. Therefore, Plaintiff argues, discovery on Defendants' scrivener's error defense is appropriate. Plaintiff argues that the requirements for conflicts discovery have been met, and opposes any delay in discovery while awaiting a decision regarding the plan interpretation.

## II. LEGAL STANDARDS

## A. ERISA Discovery in General

The Seventh Circuit has articulated different discovery rules in ERISA cases depending on the applicable standard of review. Where the arbitrary and capricious standard is used, discovery is generally not permitted. *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 813-14 (7th Cir. 2006).

If *de novo* review applies, discovery may be available but is not guaranteed. Rather, the Court has discretion to allow discovery or to rely solely on the administrative record. *See Patton v. MFS/Sun Life Fin. Distributors, Inc.*, 480 F.3d 478, 490 (7th Cir. 2007). In deciding whether to permit discovery, "[t]he most important factor . . . [is] whether the evidence [sought] is 'necessary' to an 'informed and independent judgment' on the parties' claims and defenses, which will obviously depend on the nature of the claims and whether the administrative record was 'relatively undeveloped' with respect to those claims." *Id.* at 491 (quoting *Casey v. Uddehom Corp.*, 32 F.3d 1094, 1099 (7th. Cir. 1994)). Other factors, no single one of which is necessarily dispositive, include "whether the evidence the parties seek to introduce would concern plan terms or historical facts concerning the claimant, whether the plan administrator faced a conflict of interest and . . . whether the parties had a chance to present their evidence in the ERISA administrative proceeding." *Id.*

In weighing these factors, "[a] court should not automatically admit new evidence whenever it would help to reach an accurate decision." *Id.* at 492. Rather, discovery should be allowed "only where the benefits of increased accuracy exceed the costs." *Id.* Finally,

the *Patton* court allowed discovery depositions despite the claimant's ability to have called the deponent to testify during the administrative hearing because "those concerns cannot outweigh the central one of the unusually glaring gap in the record which must be filled." *Id.* at 493.

**B.     Conflict of Interest Discovery**

While the Seventh Circuit has held that discovery is never appropriate where the arbitrary and capricious review standard applies, *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 2000), it has recently permitted discovery into alleged conflicts of interest by the plan administrator where the claimant: (1) identifies "a specific conflict of interest or instance of misconduct," and (2) makes out "a prima facie case showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's determination," *Semien*, 436 F.3d at 815. The prerequisites for conflicts discovery present "a high bar," and conflicts discovery is limited to "exceptional circumstances." *Id.* If conflicts discovery is granted, "the district court must monitor discovery closely." *Id.*

### III.  DISCUSSION

**A.     Transition Factor Provision**

The parties dispute the standard of review that will ultimately apply in this case. Defendants argue that the plan administrator found the transition factor provision to be extrinsically ambiguous and a scrivener's error, and that the administrator's decision is to be awarded the deferential arbitrary and capricious standard of review, with evidence limited to the administrative record. Plaintiff characterizes the scrivener's error argument as a request for judicial reformation of the Plan that requires Defendants to demonstrate the error by clear and convincing evidence and allows for discovery on the issue. The Seventh Circuit has never addressed the availability of Defendants' scrivener's error defense, the standard of review that applies, or the effect the defense has on discovery.

Resolution of the standard of review issue is not yet before the Court, and there are compelling arguments on both sides. Rather than engage in a premature decision on the issue or decide the case piecemeal, the Court recognizes for the purposes of this discovery motion that *de novo* review may apply, at least to Defendants' scrivener's error defense. Further, while the Seventh Circuit has limited the availability of discovery in ERISA arbitrary and capricious review cases, the Court finds that the unique circumstances of this case are such that discovery should be allowed even if the arbitrary and capricious standard applies.

ERISA requires a "full and fair" assessment of claims made by a plan participant. 29 U.S.C. § 1133. In a "typical" case, the Plaintiff presents evidence to the plan administrator in support of her claim, and the Court determines based on the evidence presented and compiled in the administrative record whether the claims were fully and fairly assessed. *See,*

*e.g., Crespo v. Unum Life Ins. Co. of America*, 294 F. Supp. 2d 980, 994 (N.D. Ill. 2003). This is not a typical case, however, because Plaintiff has no access to the type of information that would either support or undercut Defendants' argument that the transition factor provision contained a scrivener's error. Because all of that information lies exclusively within the control of Defendants, a potential gap in the record exists, and it is impossible for the Court to determine whether Plaintiff's claim was fully and fairly evaluated without affording Plaintiff the opportunity to conduct limited discovery into the drafting history of the transition factor provision. *See Patton*, 480 F.3d at 493.

Further, discovery is available in ERISA *de novo* review cases where the discovery is necessary to aid the court in reaching an informed decision, and the benefit gained by the discovery outweighs its cost. *See id.* at 490-92. This is a class action suit involving many millions of dollars, which increases the benefit potentially derived from the discovery and spreads the cost among many potential plaintiffs. Properly tailored discovery that addresses the drafting history and facts directly related to the transition factor provision is potentially of great use to the Court in evaluating Plaintiff's claims. Further, the documents were presumably considered by the Review Committee, so production should not be unduly burdensome.

It does not necessarily follow from this conclusion, however, that Plaintiff is entitled to the broad scope of discovery she has sought. Much of what Plaintiff seeks is overly broad, would come with a very high cost, and would provide minimally helpful information.

In addition to seeking information related to the drafting history of the transition factor provision to determine whether the provision actually contained a scrivener's error, Plaintiff argues that what Defendants seek is an equitable reformation of the Plan by the Court. Therefore, Plaintiff argues, she is entitled to certain information that she claims will affect the equitable analysis. Plaintiff made this argument at oral argument before the Court and only in cursory fashion in her brief, so it is difficult for the Court to decide the issue at this point. If Plaintiff seeks discovery related to equitable considerations and Defendants object, the Court will consider the issue based on a fuller presentation by the parties.

Finally, Defendants ask the Court to delay discovery on their scrivener's error defense unless and until the Court concludes that the Review Committee improperly found the plan provision ambiguous and improperly resolved the ambiguity. In the interests of sound judicial case management, the Court denies Defendants' request to delay discovery so that all aspects of the merits of the case will be before the Court at one time for decision.

**B.    Conflict of Interest**

Plaintiff points to nine actions by Defendants as evidence of a conflict of interest by plan administrators: (1) "Failed to follow Department of Labor regulations"; (2) "Despite full control of all documents and individuals with knowledge of the affirmative matter, prohibited Ms. Young meaningful access to such information"; (3) "Hid the failure to follow the Initial and 1997 Cash Balance Plans by eliminating the language in the 1998 and subsequent iterations"; (4) "Denied benefits based on affirmative defenses rather than based on an

interpretation of the written plan"; (5) "Modified the administrative record after the time for Ms. Young to appeal had elapsed"; (6) "Had knowledge that the scope of the matters being decided could have a substantial and material impact on the profitability of Verizon, involving hundreds of millions of dollars"; (7) "Created a self-serving factual record without the benefit of adversarial discovery or any independent effort to compile evidence contrary to the Plan sponsor's affirmative legal defenses"; (8) "Failed to utilize any independent (or any) experts to aid in deciding inherent legal and equitable issues"; and (9) "Allowing dependent and conflicted officers, directors, and employees of Verizon to review Ms. Young's claim." Pl. Compl. ¶ 73.

To qualify for conflicts discovery, Plaintiff must: (1) "identify a specific conflict of interest or instance of misconduct" and (2) "make a prima facie showing that there is good cause to believe limited discovery will reveal a procedural defect in the plan administrator's decision." *Semien,* 436 F.3d at 815. Plaintiff's arguments in support of her request for discovery essentially fall into two categories. Arguments six and nine assert that the potential financial ramifications of the administrator's decision led to a conflict of interest. The remaining arguments point to alleged procedural problems in the review of Plaintiff's claim.

As to the first category of arguments, the Seventh Circuit has rejected Plaintiff's inherent conflict theory. *Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, F.3d 1014, 1020 (7th Cir. 1998). "[T]he impact on the company's welfare of granting

13

or denying benefits under a plan [is] not sufficiently substantial to threaten an administrator's impartiality." *Id.* Thus Plaintiff's argument that "With tens, if not hundreds, of millions of dollars at stake, can Verizon and its employee-administrators really be without a conflict of interest?" is of no avail. Plaintiff argues that *Mers* does not apply to cases where past employees are seeking additional benefits because the company need not worry about the effect of denying benefits on the claimant, but it is undisputed that the class in this case involves current employees as well.

As to the second category, Plaintiff points to nothing more than allegations that the administrator's decision was improper. Allowing conflicts discovery on such a basis would extend the doctrine well beyond the "exceptional circumstances" for which it is intended. *See Marszalek v. Marszalek & Marszalek Plan,* 485 F. Supp. 2d 935, 939 (N.D. Ill. 2007); *Smith v. Accenture U.S. Group Long Term Disability Ins. Plan*, 2006 WL 2792695, at *2 (N.D. Ill. Sept. 27, 2006).

A review of the cases in which conflicts discovery was allowed further demonstrates the failings of Plaintiff's argument. In *Wehrenberg v. Federal Signal Corp.*, the only post-*Semien* case in the Seventh Circuit district courts allowing conflicts discovery, the plaintiff alleged that the plan administrators interpreted the plan out of concern for securities law liability and showed that previous plan participants had been given the interpretation plaintiff wanted. 2007 WL 1225375, at *5 (N.D. Ill April 23, 2007). In *Bennett v. Unum Life Ins. Co. of America*, cited by *Semien*, the plaintiff relied on depositions by plan employees and

company documents to demonstrate with great specificity concrete policies and practices of targeting valid claims for termination. 321 F. Supp. 2d 925, 933-35 (E.D. Tenn. 2004). While *Semien*'s requirement that a plaintiff have some evidence of a conflict to qualify for discovery intended to show a conflict threatens to make conflicts discovery a "dead letter," *see Wehrenberg*, 2007 WL 1225375, at * 5, Plaintiff has failed even to allege the sort of conflict that would make conflicts discovery available.

## IV. CONCLUSION

Because Defendants' scrivener's error defense is subject to possible *de novo* review, Plaintiff is entitled to limited discovery regarding the drafting history and facts directly related to the transition factor provision. Plaintiff has not made the requisite showing for conflicts discovery. **Defendants' motion is granted in part and denied in part. The parties are ordered to meet and confer to expedite and complete discovery consistent with this opinion within 120 days.**

**SO ORDERED THIS 30th DAY OF JULY, 2007.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**
Matthew Thomas Heffner                     Chicago, IL 60603
Matthew Todd Hurst
Arthur T. Susman                                   Allen Channon Engerman
Susman Heffner & Hurst LLP               Law Offices of Allen C. Engerman, P.A.
Two First National Plaza                       4800 North Federal Highway
Suite 600                                                Suite 300-D

Boca Raton, FL 33431

Jeffrey Cahn Engerman
Law Offices of Jeffrey C. Engerman, PC
12400 Wilshire Boulevard
Suite 1500
Los Angeles, CA 90025

Counsel for Plaintiff

Abigail A Clapp
James G. Richmond
Greenberg Traurig, LLP.
77 West Wacker Drive
Suite 2500
Chicago, IL 60601

Frederick G. Sandstrom
Jeffrey Huvelle
Covington & Burling
1201 Pennsylvania Ave., NW
Washington, DC 20004

Counsel for Defendants