# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CYNTHIA N. YOUNG, on behalf of herself, and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 05 C 7314 |
| v. | ) ) Magistrate Judge Morton Denlow |
| VERIZON'S BELL ATLANTIC CASH BALANCE PLAN, formerly known as Bell Atlantic Cash Balance Plan, formerly known as Bell Atlantic Management Pension Plan, and VERIZON COMMUNICATIONS, INC., as successor in interest to Bell Atlantic Corporation, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cynthia N. Young ("Plaintiff"), class representative in this ERISA class action suit, brings a motion for attorney's fees and costs under 29 U.S.C. § 1132(g)(1) following the resolution of the case by the Seventh Circuit Court of Appeals. The Seventh Circuit's ruling affirmed the prior judgments reached by this Court in a two-phase trial process. The Court entered judgments in favor of Plaintiff on Counts III and IV of their Second Amended Complaint and in favor of Defendants on Counts I and II of Plaintiff's Second Amended Complaint, as well as in favor of Defendants on their counterclaim for reformation.

This motion presents the issue of whether the judgments in favor of Plaintiff constitute

"some degree of success" on the merits that would entitle her to recover attorney's fees and costs under the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, the Court must determine: (1) whether, in the exercise of its discretion, the Court should award attorney's fees and costs to Plaintiff in connection with Phase I of the litigation, and (2) whether, in the exercise of its discretion, the Court should award attorney's fees and costs to Plaintiff in connection with Phase II of the litigation. For the reasons discussed below, the Court awards partial attorney's fees for Phase I and no fees for Phase II.

## I. BACKGROUND FACTS

The complicated facts of this case have been fully developed in prior opinions by this Court and the Seventh Circuit Court of Appeals. *See Young v. Verizon's Bell Atl. Cash Balance Plan* (*Young III*), 615 F.3d 808 (7th Cir. 2010); *Young v. Verizon's Bell Atl. Cash Balance Plan* (*Young II*), 667 F. Supp. 2d 850 (N.D. Ill. 2009) (regarding the Phase II trial); *Young v. Verizon's Bell Atl. Cash Balance Plan* (*Young I*), 575 F. Supp. 2d 892 (N.D. Ill. 2008) (regarding the Phase I trial). The following summarizes the facts most relevant to the current motion.

Plaintiff initiated this suit in 2005 under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(b), and § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking to recover retirement benefits under an ERISA-governed pension plan. Plaintiff alleged that Defendants Verizon's Bell Atlantic Cash Balance Plan (the "Plan") and Verizon Communications, Inc. ("Verizon") (collectively "Defendants") improperly calculated her pension benefits and those of similarly

2

situated employees. The Court certified a class pursuant to Federal Rule of Civil Procedure 23.

The class members were all participants in a series of defined benefit pension plans provided by the Bell Atlantic Corporation (now Verizon) to its management employees. At issue in this case were certain provisions in a cash-balance pension plan first instituted in 1996. Before 1996, Bell Atlantic operated a traditional pension plan, known as the Bell Atlantic Management Pension Plan ("BAMPP"), under which employees received a defined benefit beginning at age 65. On December 31, 1995, the BAMPP was amended and renamed the Bell Atlantic Cash Balance Plan ("Cash Balance Plan"), under which employees received benefits according to the balance they had accrued under the plan.

To transition then-current employees from the BAMPP to the Cash Balance Plan, the Plan provided a formula in § 16.5.1 to calculate each participant's opening balance in the new plan. The formula consisted of two steps: (1) calculating the lump-sum cashout value of a participant's annuity under the BAMPP; and (2) multiplying the lump-sum cashout value by a transition factor. To determine the lump-sum, the plan used a mortality table to determine the participant's life expectancy and then applied an interest rate to convert the expected annuity payments into a lump-sum benefit. Then, the transition factor to be multiplied was determined by an actuarial formula based on the participant's age and service.

For employees covered by § 16.5.1(a)(1), the Plan called for the lump-sum cashout value to be multiplied once by the transition factor. For employees covered by § 16.5.1(a)(2),

3

the Plan called for the lump-sum cashout value to be multiplied twice by the transition factor. Verizon contended the language in § 16.5.1(a)(2) contained a scrivener's error and that each section should have called for only one multiplication of the transition factor. All of the communications Defendants sent out to participating employees explaining the transition to the Cash Balance Plan, including the Summary of Material Modifications ("SMM") required by ERISA, only referenced one transition factor for all employees. Defendants calculated benefits for all employees multiplying only once by the transition factor. The Plan was amended again in September 1997, the year Plaintiff retired, and continued to contain the second reference to the transition factor in § 16.5.1(a)(2). In 1998, the Plan was amended again, this time without reference to the second transition factor.

Plaintiff's claims against Defendants involved both the calculation of the lump-sum value for all covered employees as well as the use of the transition factor for certain employees covered by § 16.5.1(a)(2) of the plan. Plaintiff alleged Defendants used the incorrect Pension Benefit Guaranty Corporation ("PBGC") interest rate when calculating the opening balance of her account. Defendants used a rate of 120% of the applicable interest rate specified by the PBGC, and Plaintiffs alleged they should have used 100% of the applicable interest rate. Plaintiff also alleged Verizon abused its discretion in multiplying the transition factor once for employees covered by § 16.5.1(a)(2).

The class members were divided into two subclasses. Subclass 1 included those employees whose opening balances under the Cash Balance Plan were calculated using 120%

of the PBGC rate pursuant to § 16.5.1(a)(1) and (a)(2). The class claim associated with

Subclass 1 (the "Discount Rate Issue") was defined as follows:

> Whether, in determining the benefits afforded by the Bell Atlantic Cash Balance Plan to the plaintiff and the Class, it was proper to use 120% rather than 100% of the applicable PBGC interest rate when calculating the "opening balances," and, if improper, the remedy therefor[].

Agreed Order for Class Certification, 2, Jan. 16, 2007.

Subclass 2 included those employees whose opening balances were calculated by

multiplying their applicable transition factor once pursuant to § 16.5.1(a)(2). The class claim

associated with Subclass 2 (the "Transition Factor Issue") was defined as follows:

> Whether, in determining the benefits afforded by the Bell Atlantic Cash Balance Plan to plaintiff and the Class, it was proper to apply the cash balance transition factor found in Table 1 of Section 16 of the Cash Balance Plan once rather than twice when calculating the "opening balances," and if improper, the remedy therefor[].

*Id.*

The Court decided these issues in two phases. In Phase I, the Court conducted a trial

on the papers, applying a deferential standard of review to the Plan administrators' decisions

to deny Plaintiff's claims based upon the administrative record. *Young I*, 575 F. Supp. 2d

892. On the Discount Rate Issue (Counts I and II), the Court upheld Defendants' decision

to calculate Plaintiff's opening account balance at 120% of the PBGC rate, instead of 100%,

as a reasonable interpretation within Defendants' discretion. *Id.* at 910. On the Transition

Factor Issue (Counts III and IV), the Court found Defendants abused their discretion by

unilaterally disregarding unambiguous Plan terms requiring the Transition Factor to be

5

multiplied twice in calculating Plaintiff's opening balance, even though Defendants claimed the language was ambiguous due to a "scrivener's error." *Id.* at 918. The Court held that "upon determining the language was a mistake, the Committee should have sought to reform the plan document in court" subject to *de novo* judicial review. *Id.*

In Phase II, Defendants counterclaimed for reformation of the Plan to eliminate the second reference to the Transition Factor multiplication. The Court then conducted a bench trial to evaluate Plaintiff's claims under the *de novo* standard of review and to decide Defendants' counterclaim for reformation. *Young II*, 667 F. Supp. 2d 850.

Following completion of the Phase II trial, the Court entered its final judgment. On the Discount Rate Issue (Counts I and II), the Court entered judgment in favor of Defendants, finding the correct interpretation of the Plan required a participant's opening account balance at 120% of the PBGC rate. *Id.* at 906. On the Transition Factor Issue (Counts III and IV), the Court entered judgment in favor of Plaintiff to the extent Defendants abused their discretion by unilaterally disregarding the plain language of the plan. *Id.* at 906-07. The Court then entered judgment in favor of Defendants on their counterclaim for reformation and reformed § 16.5.1(a)(2) of the 1996 and 1997 Cash Balance Plan to eliminate the second reference to a Transition Factor. *Id.* at 907. The Court found that Defendants committed "profound negligence" for failing to discover the mistake in 1997, but that negligence is not a bar to reformation. *Id.* at 905-06. Therefore, the Court held the Plaintiff class members were not entitled to additional Plan benefit distributions by reason of this litigation. *Id.* at

907.

Following this Court's judgment, both parties appealed to the Seventh Circuit. Plaintiff filed an appeal from this Court's rulings on the Discount Rate Issue in Phase I and on the judgment for Defendants in Phase II. Defendants cross-appealed on the judgment for Plaintiff on the Transition Factor Issue in Phase I. The Seventh Circuit affirmed this Court's ruling on all counts. *Young III*, 615 F.3d at 824. Plaintiff now moves this Court to award attorney's fees pursuant to 29 U.S.C. § 1132(g)(1).

## II. DISCUSSION

The Supreme Court recently interpreted ERISA's fee-shifting provision in *Hardt v. Reliance Standard Life Insurance Co.*, --- U.S. ---, 130 S. Ct. 2149 (2010). The discussion below explains the new standard and then applies it to this litigation, ultimately concluding that Plaintiff should receive attorney's fees for Phase I but not Phase II.

### A. The New Standard for ERISA Attorney's Fees Under *Hardt*.

ERISA section 502(g)(1) provides, "In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The statute is otherwise silent as to the standard for an award of attorney's fees.

Before the Supreme Court's recent decision in *Hardt*, the Seventh Circuit utilized a two-step process to determine entitlement to attorney's fees under ERISA. *See Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). First, an ERISA fee claimant

7

had to show it was the "prevailing party." *Id.* Second, the Seventh Circuit applied a five-factor test, to examine the claimant's entitlement to fees and costs.[1] *Sullivan v. Randolph, Inc.*, 504 F.3d 665, 670–71 (7th Cir. 2007). Alternatively to the five-factor test, the Seventh Circuit sometimes applied a "substantial justification" test, holding that ERISA authorizes the award of reasonable attorney's fees to the prevailing party unless the losing party's position was substantially justified. *Id.*

In *Hardt,* the Supreme Court expressly overruled the "prevailing party" requirement, and instead held that a court may award fees under ERISA when the claimant has achieved "some degree of success on the merits." 130 S. Ct. at 2152 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). *Hardt* involved a district court's remand to a plan administrator to determine benefit eligibility, following a determination by the court that the plan administrator abused its discretion in evaluating the plaintiff's claim. *Id.* at 2154. The Supreme Court overturned the ruling below that an ERISA beneficiary must obtain a court award of benefits to qualify for attorney's fees. *Id.* at 2155–56. But the Court also held that to achieve some degree of success, a "trivial success on the merits" or a "purely procedural victory" will not suffice. *Id.* at 2158. Rather, the standard is satisfied if the court can "fairly call the outcome of the litigation some success on the merits without conducting a lengthy

---

[1] The five factors are: (1) the degree of the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Sullivan v. Randolph, Inc.*, 504 F.3d 665, 671 (7th Cir. 2007).

inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (citation and internal quotation marks omitted).

In *Hardt*, the Court relied on its previous decision in *Ruckelshaus v. Sierra Club*, 463 U.S. 680 (1983), a case involving the discretionary "whenever appropriate" fee standard under the Clear Air Act. *Hardt,* 130 S. Ct. at 2157. The Court found the standards developed under that fee-shifting provision to be applicable to the ERISA fee-shifting provision in 29 U.S.C. § 1132(g)(1). *Id.* In *Ruckelshaus*, the Court held that "*partially prevailing* parties—parties achieving *some success*, even if not major success" were eligible for fee awards. 463 U.S. at 688 (emphasis in original). In *Ruckelshaus*, however, a complete rejection by the appellate court of the plaintiff environmental groups' claims constituted no success on the merits, and therefore did not entitle the plaintiffs to attorney's fees. *Id.* at 694.

In *Hardt*, on the other hand, the Court determined that the plaintiff did meet the "some degree of success" standard because she "persuaded the District Court to find that the plan administrator [had] failed to comply with the ERISA guidelines and that Ms. Hardt did not get the kind of review to which she was entitled under applicable law." 130 S. Ct. 2158–59 (citation and internal quotation marks omitted).

*Hardt* then proceeded to discuss the second step of the analysis, in which courts exercise their discretion to determine whether awarding fees is appropriate. It held that the five-factor test was not necessary under the ERISA fee-shifting statute, but the Court did not

foreclose the possibility that the five-factor test can be used to guide a court's discretion. *Id.* at 2158 n.8.

**B.** **Plaintiff Is Entitled to Attorney's Fees for the Transition Factor Issue in Phase I of the Litigation**.

Because this litigation proceeded in two distinct phases, it is most natural to analyze the fee issue separately for each phase. The Supreme Court has noted that dividing litigation into phases "is a system for analyzing requests for attorney's fees and costs that appears to be useful in protracted litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 549 (1986). In fact, the Court has held that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). The *Hensley* rule suggests that in a case with distinct phases of litigation, a plaintiff may only recover fees with respect to those phases that satisfy the relevant standard for awarding fees. *Ohio River Valley Envtl. Coalition, Inc. v. Green Valley Coal Co.*, 511 F.3d 407, 417–18 (4th Cir. 2007).

Though *Hensley* involved a "prevailing party" standard, at least one court of appeals has used phase-by-phase analysis in a "some degree of success" inquiry to justify a partial award, shifting fees for a preliminary injunction phase but none of the later litigation. *See id.* And the Supreme Court has used phase-by-phase analysis when dealing with a "some success" fee standard, even if it did not hold that the method was required. *See Del. Valley*, 478 U.S. at 549, 561. Using the same approach, this Court will first apply the *Hardt* standard

to Phase I of this case and then apply the same standard independently to Phase II.

Under *Hardt*, the Court is first charged with determining whether Plaintiff obtained "some degree of success on the merits." 130 S. Ct. at 2158. If so, the Court then must exercise its discretion in deciding whether to award fees. Plaintiffs may only recover fees relating to counts that can meet this standard of success. *See Hensley*, 461 U.S. at 440 (requiring claim-by-claim consideration of success); *Sierra Club v. EPA*, 769 F.2d 796, 801, 808 (D.C. Cir. 1985) (applying the *Hensley* rule to a "some success" Clean Air Act fee inquiry). Here, because Plaintiff achieved no success on the Discount Rate Issue, this Court will only consider awarding fees for time attributable to the Transition Factor Issue.

### 1. Plaintiff Achieved "Some Degree of Success on the Merits" in Phase I.

The outcome of the Transition Factor Issue in Phase I is analogous to the scenario presented in *Hardt*. *Hardt* held that the plan administrator failed to comply with ERISA guidelines and that the plaintiff did not receive the kind of review to which she was entitled. *Id.* Likewise, this Court found that Defendants abused their discretion by unilaterally denying benefit payments after determining that the Plan language contained a scrivener's error or mistake. *Young I*, 575 F. Supp. 2d at 918. *Hardt* held that the plan administrator did not act properly on the plaintiff's application for benefits by failing to consider all the evidence. 130 S. Ct. at 2154. Similarly, this Court found that Defendants acted improperly by disregarding the unambiguous Plan terms requiring the Transition Factor to be multiplied twice. *Young I*, 575 F. Supp. 2d at 918.

The practical difference between *Hardt* and the present case is that following the remand in *Hardt*, the plan administrator ultimately reversed its prior decision and awarded the plaintiff benefits. *Hardt*, 130 S. Ct. at 2154. *Hardt* expressly left open the question of whether a remand alone, without a further recovery of benefits, would constitute "some success on the merits." *Id.* at 2159. That said, at least two district courts post-*Hardt* have found a remand alone enough to meet *Hardt*'s "some success" standard. *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 09-13232, 2010 WL 3855239, at *3–4 (E.D. Mich. Sept. 28, 2010); *Richards v. Johnson & Johnson*, No. 2:08-CV-279, 2010 WL 3219133, at *3 (E.D. Tenn. Aug. 12, 2010).

ERISA's statutory structure also suggests that a party may achieve "some degree of success" even without a monetary judgment. The statute's remedial provisions include other important relief. 29 U.S.C. § 1132(a). Specifically, ERISA § 502(a) provides that a beneficiary may bring suit to recover benefits under the plan; enforce his rights under the terms of the plan; clarify his rights to future benefits under the terms of the plan; recover relief for breach of fiduciary duty by the plan; enjoin any act or practice which violates ERISA or the terms of the plan; or obtain other equitable relief to redress an ERISA violation or enforce ERISA's provisions. Thus, a court's determination that a plan administrator abused its discretion in interpreting a plan constitutes "some degree of success." It redresses an ERISA violation and is a necessary step to clarifying beneficiaries' future rights under the plan.

By providing an attorney fee-shifting provision in ERISA, Congress signaled its intent that meritorious claims should be pursued and violations of the law redressed. *See Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 545–46 (7th Cir. 2009) (rejecting the notion that ERISA fees should be calculated proportionally to the plaintiff's damages). Parties seeking to vindicate their rights under such provisions should be encouraged through fee awards when they are appropriate and reasonable. *Id.* Furthermore, an award of attorney's fees can act as a deterrent to plan administrators by rewarding suits that "force[] defendants to abandon illegal conduct." *Ruckelshaus*, 463 U.S. at 686 n.8.

It is also helpful to look at how courts have interpreted other fee-shifting statutes that trigger the *Ruckelshaus* "some success" standard.[2] For instance, in a Clean Air Act case, an order from the court that the defendant violated the Act was enough to achieve "some success," even though the court declined to penalize the defendant with any fines and no damages were paid. *Pound v. Airosol Co.*, 498 F.3d 1089, 1101–02 (10th Cir. 2007). In *Pound*, the Court determined that, under the less exacting fee-shifting standard, an award of damages was not necessary to establish entitlement to fees. *Id.* In other cases, injunctive

---

[2] The *Ruckelshaus* Court identified the following fee-shifting statutes as equivalent to § 307(f) of the Clean Air Act at issue in that case: § 304(d) of the Clean Air Act; Toxic Substances Control Act, 15 U.S.C. § 2618(d); Endangered Species Act, 16 U.S.C. § 1540(g)(4); Surface Mining Control and Reclamation Act, 30 U.S.C. (Supp. IV) § 1270(d); Deep Seabed Hard Mineral Resources Act, 30 U.S.C. (Supp. IV) § 1427(c); Clean Water Act, 33 U.S.C. § 1365(d); Marine Protection, Research and Sanctuaries Act, 33 U.S.C. § 1415(g)(4); Deepwater Port Act, 33 U.S.C. § 1515(d); Safe Drinking Water Act, 42 U.S.C. § 300j-8(d); Noise Control Act, 42 U.S.C. § 4911(d); Energy Policy and Conservation Act, 42 U.S.C. § 6305(d); Powerplant and Industrial Fuel Use Act, 42 U.S.C. (Supp. IV) § 8435(d); Ocean Thermal Energy Conversion Act, 42 U.S.C. (Supp. IV) § 9124(d); and Outer Continental Shelf Lands Act, 43 U.S.C. (Supp. IV) § 1349(a)(5). 463 U.S. at 682 n. 1.

orders or consent decrees were enough for "some success," even though the cases were later mooted.  *See Cent. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 799, 805 (9th Cir. 2009) (later-mooted permanent injunction qualifies as "some success"); *Ohio River Valley*, 511 F.3d at 417 (4th Cir. 2007) (granting fees for preliminary injunction phase but not for later-mooted monetary claims); *Citizens for a Better Env't v. Costle*, No. 80 C 0003, 1988 WL 58590, at *1–2 (N.D. Ill. May 31, 1988) (granting fees for a later-mooted consent decree).

Other cases have similarly held that remand to an administrative agency qualifies as "some success," regardless of whether the plaintiff prevailed on the remand.  *See W. Va. Highlands Conservancy, Inc., v. Norton*, 343 F.3d 239, 246, 249 (4th Cir. 2003) (remand to Office of Surface Mining Reclamation and Enforcement); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 316–17 (4th Cir. 1988) (remand to the Corps of Engineers); *Home Builders Ass'n of N. Cal. v. U.S. Fish and Wildlife Serv.*, No. CIV. S-05-0629 WBS GGH, 2007 WL 4374047, at *2 (E.D. Cal. Dec. 14, 2007) (remand to United States Fish and Wildlife Service).  Defendants protest that these cases are inapplicable because a remand was the only relief possible there, whereas Plaintiff here hoped to obtain monetary relief.  But that argument misses the point, because the relevant standard is "some success," not "total success."  Just as a remand plays the important role of ensuring that an agency fulfills its statutory duties, *Norton*, 343 F.3d at 246, so the abuse of discretion finding here held the Plan to its ERISA duties.

Given the above considerations, and under the standard set forth in *Hardt*, Plaintiff achieved "some degree of success on the merits." While Plaintiff class members lost on the Discount Rate Issue and did not ultimately recover a monetary judgment, Plaintiff successfully established an ERISA violation and forced Defendants to counterclaim to reform the Plan. Indeed, viewing matters as they stood after Phase I, Plaintiff was the prevailing party on the Transition Factor Issue; but for this Court's allowance of Defendants' counterclaim, Plaintiff class members would have been entitled to a substantial judgment as a result of the Phase I litigation. Plaintiff's suit benefitted other Plan beneficiaries by forcing Defendants to officially and transparently correct their mistake, thus clarifying benefits and hopefully encouraging the Plan to act more carefully in the future. Plaintiff's Phase I victory therefore represented far more than a "trivial success on the merits" or a "purely procedural victory." *Hardt*, 130 S. Ct. at 2158.

Defendant argues that the Phase I trial amounted to a mere procedural victory for Plaintiff, but Defendant's own cross-appeal attacking the Phase I judgment belies this argument. Cross-appeals are not necessary or proper if one merely seeks to defend a judgment on alternate grounds. *See, e.g.*, *Am. Land Holdings of Ind., LLC v. Jobe*, 604 F.3d 451, 453 (7th Cir. 2010). Rather, a party cross-appeals from a final decree when he has "a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924). Here, Defendant claimed the right to unilaterally amend scrivener's errors, but Plaintiff's Phase I

victory denied them that right. Defendant attempted in its cross-appeal to erase Plaintiff's victory on the point, but the cross-appeal failed, clinching Plaintiff's success on the merits for the Transition Factor Issue in Phase I.

### 2. The Substantial Justification and Five-Factor Tests Support a Phase I Fee Award for Plaintiff.

Before *Hardt*, the Seventh Circuit, as well as other circuits, looked to five factors to guide their discretion in determining whether or not to award attorney's fees under 29 U.S.C. § 1132(g)(1). *E.g.*, *Herman v. Cent. States, Se. and Sw. Areas Pension Fund*, 423 F.3d 684, 696 (7th Cir. 2005). These factors include: (1) the degree of the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Sullivan*, 504 F.3d at 671(quoting *Janowski v. Int'l Bhd. of Teamsters Local No. 710 Pension Fund*, 673 F.2d 931, 940 (7th Cir. 1982), *vacated on other grounds*, 463 U.S. 1222 (1983)). While the circuits use slightly different language in their phrasing of the five factors, the Seventh Circuit's factors mirror those from the other circuits. *See, e.g.*, *Janowski*, 673 F.2d at 940 (citing to *Iron Workers Local 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980) and *Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978)).

As an alternative to the five-factor test, the Seventh Circuit has also applied a "substantial justification" test, in which a court asks whether the losing party's position,

though unsuccessful, was substantially justified. *Sullivan*, 504 F.3d at 670. The Seventh Circuit has called into question the usefulness of having a multi-factor test, but it has also stated that the five-factor test can be used to implement, rather than contradict, the substantial justification test. *Id.* at 672. On this view, both tests amount to the same inquiry. *Id.*

As discussed above, *Hardt* left open the possibility that courts could consider the five-factor test, once claimants have established "some degree of success on the merits." 130 S. Ct. at 2158 n.8. Since *Hardt*, the Seventh Circuit has not decided whether the five-factor or substantial justification tests are still relevant. That said, other circuits have consistently continued to use the five factors to guide their discretion. *See, e.g.*, *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 635 (4th Cir. 2010); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119 (9th Cir. 2010); *Hewel v. Long Term Disability Income Plan*, 2010 WL 2710582, at *2 (D.N.J. July 7, 2010). Given this consensus among other federal courts, the Seventh Circuit may well continue to use the five factors or the substantial justification test. Under either version of the inquiry, Plaintiff is entitled to fees.

Defendants' position on the Transition Factor Issue in Phase I was not substantially justified. This Court found that Defendants abused their discretion in denying Plaintiff benefits under the Transition Factor provision of the Plan, which was unambiguous on its face. *Young I*, 575 F. Supp. 2d at 914. Precedent made clear, and Defendants should have known, that they could not simply disregard the Plan's plain language. *Id.* at 913–14. Defendants essentially argue that their victory in Phase II establishes substantial justification,

but only Phase I is at issue for the moment. While Phase II raised the novel issue of whether courts could equitably reform an ERISA plan, Phase I did not. Defendants never substantially justified their Phase I position that they could unilaterally deny the class over a billion dollars in benefits promised by the Plan's plain language.

The five-factor test likewise weighs in favor of awarding fees. As to the first factor, Defendants' culpability was significant. Generally speaking, a plan administrator's abuse of discretion does not usually amount to "bad faith" in the ERISA attorney's fees context. *See Quinn*, 161 F.3d at 479. At the same time, a plan administrator who negligently or ignorantly construes unambiguous plan terms may be subject to a fee award entered against it. *See, e.g., Filipowicz v. Am. Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir. 1995). Here, Defendants are culpable both because of their drafting mistake and their attempt to ignore the plain language of the Plan. Defendants relied on their position that the Plan contained a "mistake," a mistake this Court deemed the result of "profound" negligence by Defendants and which the Seventh Circuit described as a "devastating drafting error." *Young III*, 615 F.3d at 812; *Young II*, 667 F. Supp. 2d at 904–05. But precedent clearly established that Defendants could not simply ignore a plan's plain language. *See Young I*, 575 F. Supp. 2d at 913–14. Defendants' meritless construction of a careless drafting error gave rise to the dispute, and for that they are culpable.

As to the second factor, no dispute exists that Defendants can satisfy Plaintiff's possible award of attorney's fees. The Plan and Verizon are both multi-billion dollar entities.

18

As to the third factor, an award of attorney's fees against Defendants would serve to deter similarly situated plan administrators from making drafting errors through "profound" negligence. It is not too much to expect that Verizon would have had a second set of eyes proofread the crucial provisions of the Plan. Perhaps a fee award would encourage Verizon and other plan sponsors and administrators to put in place better drafting practices for the future. A fee award would also send the message that a plan administrator may not flout ERISA's "plan documents" rule simply because of its own mistake. The Court therefore concludes that this case involves the sort of conduct for which a fee award would serve as a deterrent.

As to the fourth factor, Plaintiff sought to benefit all beneficiaries covered by the relevant portions of this Plan by bringing a class-action lawsuit. Unlike cases where only one participant's benefits are at stake, here Plaintiff achieved the success she did on behalf of the class as a whole. Although the class ultimately received no monetary benefit, Plaintiff achieved an important victory for class members by clarifying their rights and holding the Plan to its ERISA duties.

Finally, the fifth factor also weighs in favor of awarding fees. As the Seventh Circuit has noted, inquiring into the relative merits of the parties' positions is simply an oblique way of asking whether the opposing party's position was substantially justified. *Sullivan*, 504 F.3d at 672. As explained in the "substantial justification" analysis, Defendants' attempt to unilaterally rewrite the Plan's plain language lacked merit. Thus, all five factors weigh in

favor of awarding fees.

Before moving on to the Phase II fee analysis, the Court must pause to question, in light of *Hardt*, the continued viability of the substantial justification and five-factor tests. The substantial justification test originated as a reference to the Equal Access to Justice Act, which entitles prevailing parties in many types of suits against the government to reasonable attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984) (quoting 28 U.S.C. § 2412(d)(1)(A)). But that statute contains a "prevailing party" requirement of the sort that *Hardt* recently held irrelevant to the ERISA fee provision. *See* 28 U.S.C. § 2412(d)(1)(A).

Because "some success" represents the new threshold to an ERISA fee award, the substantial justification test makes little sense. If one party has experienced only some success, then the opposing party, almost by definition, has also achieved some success. If so, the opposing party's position will often be non-frivolous—that is, substantially justified. Applying a substantial justification test where the threshold for fee eligibility is only some success therefore undermines the broader eligibility for fees that should exist when the fee provision lacks a "prevailing party" requirement.

For the same reasons, courts should question whether the five-factor test still makes sense in light of *Hardt*, at least if it is true that the five factors are simply an elaboration of the substantial justification test. *See Sullivan*, 504 F.3d at 672. Although several circuits

20

have announced that the test remains useful or even mandatory, none of these post-*Hardt* decisions contain substantive analysis of the test's continuing viability. Rather, the courts simply note that *Hardt* did not foreclose using the test and then proceed to employ it. *See Williams*, 609 F.3d at 635; *Simonia*, 608 F.3d at 1119. But the Supreme Court's declining to decide the issue is no support for continued use of the test. Courts owe the issue a more thorough analysis.

This Court believes that the five factors in truth represent a broader inquiry than the substantial justification test. The first factor (bad faith or culpability) does not necessarily correlate to whether a party's litigation position was justified; a party could have a colorable position and yet litigate in bad faith. Moreover, this factor has relevance beyond the course of litigation. Courts may also wish to ask whether the conduct that gave rise to litigation was culpable, even if the party has a substantially justified legal argument.

The second factor (ability to pay) has little to do with a party's litigation position. Of course, at least in the realm of awarding fees to plaintiffs, it may be a somewhat empty factor, given that ERISA defendants will almost always have the ability to pay attorney's fees. *See Sullivan*, 504 F.3d at 671.

The third factor (deterrence) seems closely related to the first, insofar as culpable behavior or bad faith is generally the sort of conduct that can be deterred.

The fourth factor (benefit to members of the pension plan) is similar to the "some success" threshold inquiry, because it asks the court to look at the plaintiff's bottom-line

success as it relates to other members of the pension plan. Nevertheless, the factor remains useful insofar as draws it attention to a particularly important type of success. The Seventh Circuit has also suggested that this factor directs that the award of fees should be proportional to the degree of damages awarded, *see id.* at 672, but that use of the factor seems questionable in light of the new "some success" threshold standard. The new standard suggests that courts may sometimes award fees even where the court awards no damages. *See supra* II.B.1.

Finally, the fifth factor (relative merits) "is an oblique way of asking whether the losing party was substantially justified." *Id.* As such, this factor alone equates to the substantial justification test and should be treated as irrelevant in light of *Hardt*.

Cases applying the *Ruckelshaus* "some success" standard to other fee provisions may provide additional clues about how the discretionary step of ERISA fee inquiries should now work. For instance, some of these provisions have been interpreted to contain a requirement that the lawsuit "serve the public interest by assisting in the proper interpretation, or implementation of the statute." *Pound*, 498 F.3d at 1102 (citizen suit under the Clean Air Act). Likewise, a fee award seems more appropriate under ERISA if a plaintiff's suit set an important precedent. For instance, Plaintiff's suit made clear that plan administrators cannot unilaterally amend a scrivener's error, even if existing precedent suggested the rule.

In any case, whether or not the substantial justification inquiry remains good law, Plaintiff is entitled to reasonable attorney's fees allocable to the Transition Factor Issue in

Phase I.

**C.    Plaintiff Is Not Entitled to Attorney's Fees for Phase II of the Litigation.**

**1.    Plaintiff Achieved No Success on the Merits in Phase II.**

As mentioned above, the test set forth in *Hardt* is that a fee claimant must show "some degree of success on the merits" before a court may award attorney's fees under 29 U.S.C. § 1132(g)(1).  130 S. Ct. at 2158 (quoting *Ruckelshaus*, 463 U.S. at 694).  The Supreme Court in *Ruckelshaus* noted that this standard "strongly suggests that *losing* parties were not intended to recover fee awards."  463 U.S. at 691 (emphasis in original); *see also N. Plains Res. Council v. U.S. Envtl. Protection Agency*, 734 F.2d 408, 409 (9th Cir. 1984) (finding that plaintiff did not achieve "some success on the merits" when its position failed on each of the issues raised).  Plaintiff cites a pre-*Hardt* ERISA case in which a district court awarded fees to a losing party based purely on the equities, *Windstream Corp. v. Berggren*, No. 4:08CV3173, 2010 WL 76364, at *2–6 (D. Neb. Jan. 4, 2010), but *Hardt* has abrogated that sort of reasoning with its requirement of a threshold "some success" showing.

In the Phase II trial here, this Court granted Defendants' counterclaim for reformation of the 1996 and 1997 Plan documents.  *Young II*, 667 F. Supp. 2d at 906.  Indeed, Plaintiff's counsel has previously conceded, as regards Phase II of the litigation, "Yes, we lost. We recognize that."  Pls.' Resp. to Verizon's Supp. Mem. on Pls.' Request for Fees, 1, Sept. 9, 2010.  Because this Court entered judgment in favor of Defendants and against Plaintiff for

Phase II of the litigation, Plaintiff did not achieve "some degree of success on the merits" and accordingly cannot recover her Phase II fees.

### 2. Independent Trust Principles Do Not Entitle Plaintiff to Fees.

Plaintiff argues that trust law concepts provide alternative grounds for awarding attorney's fees and costs in this case. According to Plaintiff, the law of trusts permits trustees to recover fees spent defending a trust, a role into which Plaintiff stepped when she defended the plain language of the Plan. Plaintiff notes that ERISA imports trust law to govern fiduciary duties and argues courts should similarly look to trust principles when awarding fees.

Unfortunately for Plaintiff, federal case law forecloses this argument. The Supreme Court case on which Plaintiff relies identified three traditionally recognized situations in which courts have inherent power to make an exception to the American Rule against shifting fees, but none of those circumstances are present in this case. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257–59 (1975) (listing creation of a common fund, disregard of a court order, and bad faith as traditional exceptions to the American Rule). In fact, after recognizing those judicially-created exceptions, *Alyeska* held that any new exceptions to the American Rule "are matters for Congress to determine," reasoning that Congress has seized this prerogative by enacting "specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." *Id.* at 260–62; *see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of*

*Health and Human Res.*, 532 U.S. 598, 602 (2001) (reaffirming that courts will award fees only with explicit statutory authorization). Here, the relevant statute has just such a fee-shifting provision, which the Supreme Court recently interpreted in *Hardt*. Plaintiff cannot meet this statutory standard as to Phase II, and this Court is not free to fashion alternative grounds on which to award fees. *See Alyeska*, 421 U.S. at 260–62.

## III. CONCLUSION

For the reasons set forth in this opinion, the motion for attorney's fees and costs is granted in part and denied in part. Plaintiff may collect reasonable attorney's fees and costs as to the Transition Factor Issue in Phase I of the litigation but not as to Phase II. The parties are encouraged to meet and seek a resolution of the amount of fees to be paid consistent with this order.

SO ORDERED THIS 20th DAY OF OCTOBER, 2010

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

**Matthew Thomas Heffner**
**Matthew Todd Hurst**
**Arthur T. Susman**
Susman Heffner & Hurst LLP
Two First National Plaza
Suite 600
Chicago, IL 60603

Counsel for Plaintiff

**Allen Channon Engerman**
Law Offices of Allen C. Engerman, P.A.
4800 North Federal Highway
Suite 300-D
Boca Raton, FL 33431

Counsel for Plaintiff

**Jeffrey C. Engerman**
Law Offices of Jeffrey C. Engerman, PC
11901 Santa Monica Boulevard
Suite 700
Los Angeles, CA 90025

Counsel for Plaintiff

**Abigail A. Clapp**
**James G. Richmond**
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 2500
Chicago, IL 60601

Counsel for Defendants

**Jeffrey Huvelle**
**Frederick G. Sandstrom**
Covington & Burling
1201 Pennsylvania Ave., NW
Washington, DC 20004

Counsel for Defendants