# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA N. YOUNG, on behalf of herself, and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) 05 C 7314 ) |
| | ) CLASS ACTION ) |
| VERIZON'S BELL ATLANTIC CASH BALANCE PLAN, formerly known as Bell Atlantic Cash Balance Plan, formerly known as Bell Atlantic Management Pension Plan, and VERIZON COMMUNICATIONS, INC., as successor in interest to Bell Atlantic Corporation, | ) ) Magistrate Judge Denlow ) ) ) ) ) ) |
| Defendants. | ) ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

Defendants Verizon's Bell Atlantic Cash
Balance Plan and Verizon Communications, Inc.

Jeffrey G. Huvelle (admitted *pro hac vice*)
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel. (202) 662-6000
Fax (202) 662-6291

James G. Richmond (620637)
Abigail A. Clapp (6269540)
Greenberg Traurig, LLP
77 West Wacker Drive, Ste. 2500
Chicago, IL 60601
Tel. (312) 456-8400
Dated: March 3, 2011    Fax (312) 456-8435

The issue before the Court is the amount of fees to be paid plaintiffs pursuant to the Court's opinion and order of October 20, 2010. (Dkt No. 263.)

Applying *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149 (2010), and viewing the litigation as a progression of discrete phases, the Court has ruled that plaintiff had achieved "some degree of success on the merits" in Phase I of the litigation – the "trial on the papers, applying a deferential standard of review to the Plan administrators' decisions to deny Plaintiff's claims based upon the administrative record" – and may collect reasonable attorney's fees and costs "as to the transition-factor issue in Phase I," but may not collect fees and costs incurred litigating the discount-rate claim, on which plaintiff obtained "no success." (Dkt. No. 263 at 5, 10-16, 25.) The Court also held that as the losing party in Phase II – the "bench trial to evaluate Plaintiff's claims under the *de novo* standard of review and to decide Defendants' counterclaim for reformation" – plaintiff achieved "no success on the merits" and therefore is entitled to no fees for that phase. (*Id.* at 23-25.)

Plaintiff has requested an award of $2,577,218 in fees and $39,433 in costs. (Dkt. No. 276 at 1.) Those amounts are excessive and unreasonable. A reasonable fee within the parameters of the Court's ruling should be less than $500,000.

## I. PLAINTIFF'S FEE REQUEST IS BASED ON EXCESSIVE HOURS

ERISA permits an award of "a reasonable attorney's fee." ERISA § 502(g)(1), 29 U.S.C. § 11329(g)(1). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," often called the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking the award "should submit evidence supporting the hours worked" and should exclude from the request "hours that are excessive, redundant, or otherwise unnecessary." *Id*. at 433-34. "Billing judgment is an important component in fee setting," and "[h]ours that are

DC: 3893919-1

not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* at 433 (internal quotations and citation omitted) (emphases in original).

"The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Id.* at 436. "Once the lodestar is determined, the court should consider whether the documentation of the hours is adequate and whether 'billing judgment' was used." *Estate of Enoch v. Tiener*, 570 F.3d 821, 823 (7th Cir. 2009)

Here, however, plaintiff fails to show why so many hours were required to litigate a claim that, although interesting, was neither complicated nor time consuming; she has failed to exercise "billing judgment" to avoid such plainly improper billing practices as billing for the time of five attorneys to attend a simple discovery hearing; she has failed to submit documentation in a format that would permit the Court to see how much time in total was spent on particular tasks and, thus, whether the time is reasonable; and she has failed to tailor her request to the limited nature of the success that she achieved.

This Court's local rules require the party opposing the fee request to disclose its own fees. Plaintiff's requested fee of $2,577,218 for a limited portion of the litigation is substantially greater than the fee Verizon paid its own counsel to handle the *entire* case. The actual fees paid by Verizon are a reliable indication of billing judgment and commercially acceptable billing practices for this kind of litigation, and plaintiff fails to explain why it took her lawyers so much more time than Verizon's counsel to perform corresponding tasks.

### A. **Plaintiff's Hours**

For the limited portion of the litigation on which she obtained "some degree of success," plaintiff seeks fees for 5,296.51 hours of work, plus approximately 100 estimated hours since January 1, 2011. The total – 5,400 hours – is wildly excessive.

- 3 -

Asserting that "[a] full recitation" of the work requiring this expenditure of time could not fit within 25 pages, plaintiff instead provides "a brief summary." (Dkt. No. 276 at 3.) But the "brief summary" makes nowhere near the showing required to support a fee award of more than $2.5 million. Indeed, plaintiff's summary reveals a modest and unremarkable level of litigation activities. Plaintiff states that, during Phase I, counsel generated 180 pages of briefing, reviewed and cataloged 50,000 pages of documents produced by defendants, conducted four depositions, and engaged in "heated discovery battles." (*Id.*) According to plaintiff, the appeal of the Phase I issue was "no less demanding" because counsel needed to bear in mind the effect that the argument on the reformation claim would have on the Phase I issue. (*Id.*) And plaintiff points to the "novel and complex" legal issues involved in the fee dispute. (*Id.*)

The underlying billing records also fail to support using 5,400 hours of attorney time as the basis for any fee award. First, the records are presented attorney-by-attorney, so that great effort, comparing timesheets for seven different lawyers, is required just to see how many of the lawyers worked on the same task and how much time they spent. Second, they are heavily redacted. Much of the time is described simply as 'Research [REDACTED]" or "Review [REDACTED]." And many of the unredacted entries are nevertheless cryptic. But time entries "must be sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation" and not "so cryptic as to preclude reasonable analysis." *DeCola v. Keel*, No. 09 C 3799, 2010 WL 5232972, at *4 (N.D. Ill. Dec. 16, 2010). From November 2, 2006 until December 5, 2006, for example, Heffner had 13 entries totaling 42 hours that read, "Research [REDACTED]" (Dkt. No. 281 at 7759.) "[R]easonable analysis" of such entries is impossible. Third, no timesheets are provided for the hours spent on the discount-rate claim during Phase I, or for hours spent exclusively focused on

the reformation or discount-rate claims on appeal, making it impossible to determine the basis on which some time entries but not others were excluded from the fee request. Fourth, most importantly, the time records fail to describe litigation activities that would justify the extraordinary amount of hours claimed.

### 1. Phase I

Plaintiff's hours for Phase I are excessive. Including time spent on the discount rate claim, plaintiff's legal team recorded 5,168 hours over a two-year period of litigation. For the same time period, Verizon's lawyers billed fewer than 1,700 hours. (Exhibit A, ¶ 3.) Plaintiff's time exceeded defendants' by a factor of three. "[E]vidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000); *see James v. AMTRAK*, No. 02 Civ. 3915(RJH)(AJP), 2005 WL 6182322, at *14 (S.D.N.Y. March 28, 2005) ("Although by no means a perfect proxy, the time billed by defendant's counsel is certainly a rough measure of what was 'reasonable' in this case, even taking into account that plaintiff had the ultimate burden of persuasion.").

Overall, ten timekeepers involved in the litigation recorded at least 50 hours in Phase I, including time on the discount rate claim. Seven of the ten were on plaintiff's legal team, including four of the five with the most recorded hours. *One* of plaintiff's lawyers *by himself* recorded nearly as much time as Verizon's entire team.

| PHASE I HOURS | |
|---|---|
| Hurst / Plaintiff | 1613 |
| Heffner / Plaintiff | 1354 |
| *Sandstrom / Verizon* | ***1144*** |
| Lamancusa / Plaintiff | 571 |
| Susman / Plaintiff | 531 |
| *Huvelle / Verizon* | ***428*** |
| Hara / Plaintiff | 407 |
| Pavlat (paralegal) / Plaintiff | 271 |
| A. Engerman / Plaintiff | 259 |
| J. Engerman / Plaintiff | 153 |
| *Vine / Verizon* | ***53*** |
| **Plaintiff Total Hours** | **5,169** |
| **Verizon Total Hours** | **1,696[1]** |

With so many lawyers recording so much time for plaintiff during Phase I, it is not surprising that the underlying timesheets of plaintiff's counsel reveal that plaintiff is seeking fees for hours that are "excessive" and "redundant." *Hensley*, 461 U.S. at 433-34. On January 28, 2008, for example, plaintiff served a Rule 30(b)(6) notice identifying just ten topics. (Exhibit B.) For this straightforward and discrete discovery request, plaintiff seeks fees for 10 hours by Hara on January 7 and 16; 8.5 hours by Heffner on January 18, 19, and 21; 0.5 hours by Susman on January 22; and by Hurst some portions of 5.5 hours on January 22 and 6.5 hours on January 25. (Exhibit C.) Thus, plaintiff seeks fees based on 19 hours, plus an unspecified amount of time by Hurst, for the preparation of a routine discovery request identifying ten topics.

The timesheets for the period from April 1, 2008 through the Phase I ruling on August 28, 2008 provide another example of the "excessive" and "redundant" hours on which plaintiff's fee request is based. Discovery closed on March 31, 2008, and during the following

---

[1] The Verizon total of 1695 hours includes time by local counsel, Greenberg Traurig (12 hours), as well as 60 hours by other timekeepers at Covington, including 35 hours by one paralegal and minor amounts of time by eight other timekeepers, all of whom billed less than nine hours. (Exhibit A, ¶ 3.)

five months both parties devoted themselves exclusively to the Phase I submissions on the merits and the oral argument before the court. Plaintiff submitted two papers, totaling 103 pages. (Dkt. Nos. 112 and 118.) Verizon submitted two papers, totaling 100 pages. (Dkt. Nos. 115 and 120.) All four papers addressed both the discount-rate claim and the transition-factor claim. During this five-month period, plaintiff seeks fees for 1,199.25 hours on the transition factor claim alone. (Dkt. Nos. 280-1 at 7751; 279-2 at 7710; 279-1 at 7696.[2]) Yet, Verizon's total time during the five month period, *including* time spent on the discount rate claim and the oral argument, was 456 hours.[3] If just 100 hours of Verizon's time is allocated to the discount-rate claim, leaving 350 hours on transition-factor claim, plaintiff's legal team logged more than three hours for every hour by Verizon to generate the same volume of legal argument. *See Democratic Party of Washington v. Reed*, 388 F.3d 1281, 1287-88 (9th Cir. 2004) (if correct comparison for appeal were 1,041 hours for party seeking fees and 383 hours for opposing parties, that would suggest "excessiveness or needless duplication.").

A third example is the motion to compel that plaintiff filed on September 27, 2007, which the Court decided on November 28, 2007. (Dkt. No. 89.) For plaintiff this involved a 15-page memorandum and a ten-page reply. (Dkt. Nos. 88 and 94.) It was, moreover, not time well spent, because the Court ultimately ruled that Verizon had satisfactorily responded, or had agreed to respond, to *every* discovery request that was at issue. (Dkt. Nos. 96 and 98.) But the

---

[2] Plaintiff's counsel also recorded another 862 hours on the discount rate claim, most of which, no doubt, occurred during this period, although plaintiff's submission does not permit us to determine the exact amount. (Dkt. Nos. 280-1 at 7751; 279-2 at 7710; 279-1 at 7696.)

[3] For Verizon, including time briefing the discount rate claim, the hours were Sandstrom 286, Huvelle 137, Vine 28 and other 6. For plaintiff, *without* including time on the discount rate claim, the hours were Heffner 365, Lamancusa 313, Hurst 163, Hara 163.8, Susman 123, Allen Engerman 37 and Jeffrey Engerman 36. (Exhibit A, ¶ 4.)

amount of hours for which plaintiff seeks a fee on this motion is astonishing: at least 176 hours – including 99.25 hours for Heffner, 35.25 for Hara, 9.75 for Susman, at least 4.75 by Allen Engerman; at least 4.75 by Jeffrey Engerman; 1.75 for Lamancusa; 2.25 for Hurst and 20.5 for Pavlat. (Exhibit D.) And plaintiff seeks fees for the attendance of five attorneys – Heffner, Hurst, Susman, Hara and Lamancusa – at the hearing on the motion. (*Id.*[4])

### (a) Hours on the Transition-Factor Claim

Plaintiff's fee request for the transition factor-claim in Phase I is based on a total of 4,245.41 hours (3961.41 hours for SHH; 110.25 hours for Allen Engerman and 173.75 hours for Jeffrey Engerman). This excludes 862 hours on the discount rate claim (734.83 for SHH; 42.50 for Allen Engerman and 84.75 for Jeffrey Engerman). (Dkt. No 280-1 at 7751; 279-2 at 7710; 279-1 at 7696.) Plaintiff offers a number of arguments why a fee based on more than 4,245 hours is reasonable. None of these arguments has merit.

**First**, plaintiff points to the volume of work involved in Phase I, highlighting the four depositions, 180 pages of briefing, the review of 50,000 pages of documents and the "heated discovery battles." (Dkt. No. 276 at 3.) But this was not an arduous workload. Phase I was decided on the administrative record, which was provided to plaintiff, along with two written decisions setting forth the analysis of the plan administrator, and without live testimony. Four depositions is a very light load, and 50,000 pages of produced documents is not unusual.

**Second**, plaintiff's burden of justifying 4,245 hours is not satisfied by rhetoric of "heated discovery battles." Disagreements between the parties during Phase I arose because

---

[4] The count of 176 hours on this motion included entries specifically referencing the motion to compel. During the period while the motion was drafted, filed and argued, Susman had six entries referencing the motion, which were counted, and 13 entries that read "[REDACTED]" OR "Research [REDACTED]," which were not counted. Some or all of the 13 redacted entries may have related to the motion. (Exhibit D.)

Verizon urged that discovery be limited, and that the parties brief the Phase I merits promptly.[5] Plaintiff sought extensive discovery and to put off the briefing.

        The issue was joined in May 2007 when Verizon suggested that Phase I could be briefed starting in June 2007 with the record consisting of the 5,000 page administrative record. (Exhibit E (5/2/07 e-mail).) But plaintiff instead sought discovery. (Exhibit E (5/21/07 e-mail).) When Verizon objected, the Court restricted plaintiff to "properly tailored" and "limited discovery into the drafting history of the transition factor provision" and noted "[m]uch of plaintiff's discovery is "overly broad, would come at a very high cost, and would provide minimally helpful information." (Dkt. No. 86.)

        Plaintiff's counsel subsequently filed three motions to compel and spent an enormous number of hours on the motions including, as shown above, at least 176 hours on the first motion filed in September 2007. The hours spent by plaintiff's counsel resulted from her ignoring the court's instruction that discovery be narrowly tailored, not from any "heated" quality of the dispute. On plaintiff's September 2007 motion (Dkt. No. 87), the Court ruled, contrary to plaintiff's contention, that Verizon had sufficiently produced or had agreed to produce documents responsive to *every* request at issue, including Request Nos. 2-3, 5-8, 10-16, 20-23, 25-32, 34 and Interrogatory Nos. 1-2, 4, 7-9, 19-20, 24-27, 29. (Dkt. No. 98.) Plaintiff next motion to compel, filed on December 18, 2007, challenged the privilege claims of Morgan Lewis (Dkt. Nos. 100 and 101). Plaintiff subsequently withdrew the motion after a hearing at which Verizon agreed to provide three of the documents subject to one portion of the motion.

---

[5]     Plaintiff faults Verizon for seeking to bifurcate the litigation into two stages. (Dkt. No. 276 at 14.) Whatever the merits of that criticism, deferring certain issues to a second stage does not explain the extraordinary number of hours spent by plaintiff in the first stage.

(*See* Dkt. No. 101 and Exhibit E (12/27/07 letter).) In February 2008, plaintiff filed a third motion to compel, supported by a ten-page memorandum and directed at Verizon. The Court denied this motion in its entirety. (Dkt. Nos. 104, 108.) Plaintiff asks for fees for 75 hours of lawyers time to research, write and argue this motion, including 10.75 hours by Heffner to prepare for the argument and to argue the motion. (Exhibit G.)

Despite plaintiff's description of "heated discovery battles," the second and third of plaintiff's motions to compel were resolved without Verizon filing an opposition. Even if the court believes that all of the activities of plaintiff's counsel *during* Phase I are presumptively an appropriate basis for a fee award, as it has indicated, no fee should be awarded for most of the time spent on the motions to compel because plaintiff's time was plainly excessive. Moreover, fees for the motions should be severely reduced for the additional reason that they were largely unsuccessful. First, the Court in very large part denied the relief requested by plaintiff on the three motions. Second, the ultimate aim of plaintiff's discovery was to prove that Verizon intended to multiply the transition factor twice. But the documents in the administration record made available to plaintiff *before* the start of discovery included the documents that ultimately demonstrated to the Court's satisfaction that the second reference was a scrivener's error.

**Third**, although boasting that they "displayed an intense determination to win this case throughout" and "punched it out toe-to-toe with [Verizon's counsel]" (Dkt. No. 276 at 8, 13), plaintiff faults Verizon's counsel for litigating "tenaciously," and at the very least implies that counsel for Verizon did so in an improper way, accusing it of "throwing up every road block imaginable," conducting a "scorched-earth defense," creating "procedural hoops" through which plaintiff needed to jump and "[seeking] to add an extra layer of time and expense to the

proceedings by insisting the claim first wind its way through the administrative process." (*Id.* at 13-14.)

This fundamentally and unfairly distorts both the procedural history of the case and the conduct of Verizon's counsel. The Court ordered that the transition-factor claim first be decided by the plan administrator, and its order was plainly appropriate. *See*, *e.g.*, *Conkright v. Frommert*, 130 S. Ct. 1640 (2010). Far from adding to plaintiff's litigation tasks, the claims review process resulted in plaintiff's obtaining, without the need to issue formal discovery, a clear and detailed analysis of the plan administrator's conclusion that the parties intended a single multiplication by the transition factor and resulted in plaintiff's obtaining, without need for discovery, the 5,000 pages of key documents that the plan administrator relied on in coming to this conclusion.[6]

Far from blocking the progress of the litigation, Verizon's counsel sought to expedite the case and reduce expense, and its efforts to do so came in forms large and small. Significantly, Verizon agreed to class certification, only taking issue with plaintiff's failure to provide for properly defined subclasses when plaintiff added the transition-factor claim, and working cooperatively with plaintiff's counsel to work out appropriate class definitions. (Dkt. Nos. 54-61.) Verizon's willingness to stipulate to class certification belies the accusation that it pursued a scorched-earth strategy. Verizon's efforts included small gestures, too, offering to make Barry Peters and Robert Moreen available to plaintiffs for a telephone interview in connection with the claims review process (which plaintiffs declined); offering to provide

---

[6] The only burden imposed on plaintiff as a result of the administrative process was the self-inflicted task of moving to abort the process on the grounds that the plan administrator had not adequately explained why it needed an additional time to complete its review. (Dkt. No. 51.) The court rejected plaintiff's motion. (Dkt. No. 53.)

- 11 -

plaintiff with a second copy of the administrative record, bates-stamped by Verizon, so that the parties would have a common numbering system (which offer plaintiff quickly accepted); and pointing out for plaintiff which documents in the administrative record substantiated certain points in the claims decision. (Exhibit E (1/3/07 email; 1/9/07 letter; 4/18/07 letter).)

**Fourth**, plaintiff claims it was appropriate to have seven lawyers heavily involved in the litigation. Although plaintiff states that class counsel "drew upon the expertise and time of every lawyer in their combined offices," plaintiff does not identify the unique expertise of any of them, and it was plainly inefficient to have so many lawyers handling the same matter. With three partners at SHH already heavily involved in the litigation, plaintiff offers no reason why it was appropriate to have the two Engermans also engaged, since they did little more than conduct "review," "analysis" and "telephone conferences."[7] No explanation is given for all five lawyers at SHH engaged in the same tasks, such as legal research, drafting and reviewing documents. And plainly when five SHH lawyers all show up for a hearing on a discovery matter, as they did for the November 28, 2007 hearing, and plaintiff seeks fees for the hours spent by all of them, the hours are excessive.

**Sixth**, plaintiff claims that the large number of hours was appropriate because it was a class action. But here no notice to the class was required, or provided, here, and there is no indication whatsoever that this was a case where class members were actively involved and substantial time by plaintiff's counsel was required to communicate with the class and manage

---

[7] Jeffrey Engerman also spent many hours on "scan, review and index [REDACTED]." (Dkt. 279-2 at 7709.) Moreover, both Engermans improperly seek Phase I fees for work done during Phase II. (*Id.* at 7710; Dkt. 279-1 at 7696.)

their expectations. Rather, plaintiff's time records reveal surprisingly few communications with their client or the class, less than one per year.

**Seventh**, plaintiff argues that as a plaintiff with a weak case (an "uphill battle"), it was appropriate for her to spend more time than Verizon did, and the court should therefore give no weight to the fact that Verizon's attorneys were able to litigate the case spending far fewer hours. (Dkt. No. 276 at 7-10.) Plaintiff also asserts, without basis, that Verizon received help from outside professionals. (*Id.* at 8.) It is true that the tasks of counsel for plaintiff and defendant are not necessarily the same. But some time-consuming tasks fall only on defense counsel. Here, examples of such tasks handled by Verizon's counsel but not plaintiff's are the preparation of a 20-page privilege log for the Morgan Lewis documents, which was performed by Covington & Burling, and searches through boxes of documents sent to storage in New Jersey years ago.

Moreover, where plaintiff and defendants were performing exactly the same tasks, such as filing 100 pages of argument on Phase I issues in the April - August 2008 time period, plaintiff with her seven-attorney staffing model spent far more time that Verizon. Likewise, on appeal, where the tasks for each party were equivalent, plaintiff expresses surprise that Covington charged only $30,208 for filing, briefing and arguing the cross appeal on the Phase I issue. (Dkt. No. 276 at 9.) Why should this be surprising? The issues had been extensively briefed before the district court; the portion of the appellate brief devoted to the issue was small; and only a couple of minutes of the oral argument focused on that issue.

**Eighth**, plaintiff points to the high dollar amounts that they were seeking to recover in the form of additional benefits. But the possibility of huge financial recovery by their clients does not justify time (and fees) that are excessive in relation to the tasks accomplished.

And plaintiff's emphasis on the possibility of the large monetary recovery that they hoped to obtain simply underscores the significance of their failure to recover a single dollar in additional benefits for the clients.

### 2. The Appeal

Plaintiff's request for fees incurred in connection with the appeal should be rejected for two reasons. First, plaintiff's hours on appeal are unreasonable. Plaintiff has disclosed the following hours on appeal:

|  | COMP. HOURS | NON-COMP. HOURS | TOTAL HOURS | FEES |
|---|---|---|---|---|
| **Susman** | 20.33 | 121.67 | 142.00 | $106,500 |
| **Heffner** | 111.45 | 414.05 | 525.50 | $262,750 |
| **Hurst** | 115.93 | 338.82 | 456.85 | $228,425 |
| **Hara** | 105.80 | 270.20 | 376.00 | $146,640 |
| **Lamancusa** | 80.45 | 301.80 | 382.25 | $133,788 |
| **A. Engerman** | 11.35 | 22.90 | 34.25 | $ 8,513 |
| **J. Engerman** | 12.55 | 29.20 | 41.75 | $ 5,648 |
| **Pavlat** | 33.33 | 86.67 | 120.00 | $ 24,000 |
| **TOTAL** | **491.19** | **1567.31** | **2078.60** | **$916,264** |

(Dkt. No. 280 at 7719.) At a scheduling conference, plaintiff took umbrage at Verizon's references to the unreasonableness of a million-dollar fee for an appeal, which, counsel stated, was inaccurate. But the calculation of $916,264 is based on plaintiff's own summary of the time spend by her attorneys on appeal, and her own billing rates. (*Id.*) "A million dollars" is an appropriate shorthand reference to $916,264, and plaintiff's fee memorandum does not identify or clarify the claimed inaccuracy.

Plaintiff has requested fees in connection with the appeal in the amount of $205,000 – based on her allocation of 491.19 hours to her response to Verizon's cross-appeal. In making this allocation, plaintiff figured that 18 pages of her April 24 Response and Reply Brief dealt with the cross-appeal. Thus, plaintiff allocates 17% of the pages of her appellate briefs (18

÷ 104), 24% of her appellate hours (491 ÷ 2078) and 22% of her appellate fees ($205,000 ÷ $916,264) to the Phase I issue. Of the 491 hours allocated to the appeal of the Phase I issue, 225 of them were spent writing the 18 pages of the response during the 30-day period between Verizon's filing of its Principal and Response Brief on March 24 and plaintiff's filing of her April 24 Response to the cross-appeal. (Dkt. No. 279-1 at 7697; 279-2 at 7211 and 280 at 7719-30)[8]

Plaintiff's fee request is unreasonable because it is based on excessive hours. Covington billed a total of $215,000 for all aspects of the appeal, including all briefs and oral argument. This was based on 440 hours: 285 by Sandstrom, 137 by Huvelle, 28 by Vine and three by others. (Exhibit A, ¶ 5.) No client would pay an attorney in private practice fees based on 2,000 hours to handle an appeal, and no client would pay an attorney in private practice $205,000 to write a portion of a brief amounting to just 18 pages.

Plaintiff argues that appeals are "not cheap." (Dkt. No. 276 at 19.) But the appellate fee awards cited by plaintiff in support of this proposition are in the amounts of $155,000, $220,000, $235,000, and $304,000 – far below the $916,000 in fees recorded by plaintiff. (*Id.*[9]) The fee awards in these cases cited by plaintiff are consistent with the hours and

---

[8] By contrast, Verizon's counsel recorded 178 hours on their March 24 Principal and Response Brief, 20% of which (12 pages) dealt with the Phase I issue, and 85 hours on the Reply, which was 15 pages and dealt only with the Phase I. (Exhibit A, ¶ 5.)

[9] In one of the four cases cited by plaintiff, *Democratic Party of Washington*, 388 F.3d at 1287-88, although $235,000 were awarded in fees in connection with the appeal, no party received more than $132,000 in fees for the appeal, and the court reasonably concluded that none the three appellees, the Democratic, Republican, and Libertarian parties, could be expected to avoid duplication of effort by relying on the others to represent its interests. In another, *Gonzales v. Bratton*, 247 F. Supp. 2d 432 (S.D.N.Y. 2003), the fee award of $155,000 is substantially less than the $916,000 in fees incurred by plaintiff here. The largest award cited by plaintiff, $304,000 in *Flying J Inc. v. Comdata Network, Inc.*, Civ. No. 1:96-CV-066BJS, 2007 WL 3550342 (D. Utah Nov. 15, 2007), is one-third of plaintiff's total appellate fee here, and was (continued…)

fees that Verizon paid for the entirety of the appeal: $215,000. Application of plaintiff's allocation factor of 22% to Verizon's total appellate fee, or to the fees in the four cases cited by plaintiff, would result in fees of $34,000, $47,300, $51,700, or $66,880.

Plaintiff responds to three points previously made by Verizon regarding the excessive hours on which plaintiff bases her request for appellate fees. First, plaintiff argues that counsel in making the reformation argument on appeal needed to be "cognizant" of the effect that this argument might have on the Phase I issue. (Dkt. No. 276 at 19-20.) But the need to consider the interrelationship of several arguments exists in nearly every appeal.

Second, plaintiff stubbornly defends her seven-lawyer staffing, but plaintiff offers no justification for such redundancy of effort, except to refer back to the argument made in connection with Phase I that it would have been "foolish" not to call on "every available professional at their respective firms." (*Id.* at 276 at 17 and 20.).

Finally, plaintiff quarrels with Verizon's point that the Phase I transition factor issue was not new. (*Id.* at 20.) Plaintiff misses the point. Plaintiff has asked for fees for 1,200 hours briefing the Phase I issue before the district court during the five months starting on April 1, 2008. (*See supra* at 7.) On appeal, there was no need for plaintiff to re-invent the wheel, and no apparent reason why it was necessary for plaintiff's team of lawyers that had already clocked 1,200 hours briefing the Phase I issues to spend another 491 hours researching and writing, at most, 18 pages of an appellate brief on the same issues.

---

awarded in a case where the parties had agreed by contract that in the event of litigation, the non-prevailing party was required to pay reasonable fees as damages. And in *Tenax Corp. v. Tensar Corp.*, No. H-89-424, 1992 WL 516089, at *5-6 (D. Md. Oct. 22, 1992), where $235,000 in fees were awarded in connection with the appeal, the court took into account that the fee-seeking party had asked for only 34% of its total post-trial billings.

Plaintiff's request for fees on the appeal should also be rejected, or very substantially reduced, because any success she obtained through the Seventh Circuit's affirmance of the district court judgment was, at most, slight. The appeal was not divided into stages. From the perspective of the plaintiffs themselves, they failed to obtain a reversal of the district court's ruling denying them any additional benefits. Insofar as the Seventh Circuit clarified the law relating to participants, plaintiff lost: contrary to plaintiff's argument, the appellate decision made clear that courts have the authority under ERISA to correct a scrivener's error in a plan.

### 3. The Fee Litigation

Plaintiff seeks fees in connection with her fee request amounting to $293,644. This is based on $236,537 by SHH through December 31, 2010; $3,844 by Allen Engerman and $3,263 by Jeffrey Engerman and $50,000 estimated fees since January 1, 2011. The fees are based on time recorded by eight different time-keepers. Even without counting the $50,000 in time since January 1, 2011, for which no records have been provided, five of plaintiff's time-keepers have each spent more than 50 hours on the issue, and three have each spent considerably more than 100 hours.

For the time prior to October 20, 2010, plaintiff has requested 50% of the actual fees, since the court rejected her request for fees on Phase II. But a similar reduction should be applied to the fees subsequent to October 20, 2010 – based on the percentage of plaintiff's request that is actually awarded. Thus, for example, if plaintiff recovers $375,000 on the request for $2.2 million in fees on Phase II and the appeal, her request for fees after October 20 should reduced substantially.

Moreover, plaintiff's hours are excessive and redundant. Five attorneys at SHH all conducted legal research on the fee issue. Splitting research among so many lawyers necessarily introduces inefficiencies and redundancies.

- 17 -

## II. THE HOURLY RATES

Two points should be noted about the hourly rates requested by plaintiff. First, plaintiff has boosted her fee request by applying counsel's most recent rates for the entire period back to 2006. This results in substantial inflation of the rates for the early years: 31% for Hara (increasing his rate from $270 to $390); 40% for Lamancusa (from $250 to $350); 17% for Susman (from $640 to $750). (*See* Exhibit F.)

Second, plaintiff's fee memorandum makes clear that plaintiff's lawyers are contingent-fee lawyers, who do not bill on an hourly basis except on rare occasions as a courtesy when requested to do so by a friend or a long-term client. (Dkt. No. 276 at 13.) As plaintiff concedes, "in litigation such as this, Class Counsel operate exclusively on contingent-fee basis." (*Id.*) Thus, they do not have billing rates that have not been tested and validated by paying clients in the market place. This may also account for their ignoring two realities of the legal market place today: (1) stated billing rates are routinely and substantially discounted for major litigations and (2) lawyers billing on an hourly basis are expected to be highly efficient; they are expected to staff matters leanly; and they are expected not to assign multiple lawyers to tasks that could be accomplished by just one attorney.

Whether the billing rates of plaintiff's counsel are just right, or are somewhat overstated, is not the critical issue here. The rates requested by plaintiff are appropriate only where counsel is highly efficient. Plaintiff's requested rates underscore the need not to award fees for excessive hours. Here, however, plaintiff's hours for compensable tasks are grossly excessive – by a factor of three, four or five.

## III. PUBLIC POLICY CONSIDERATIONS

ERISA allows the court to award a reasonable fee to "a party," not her lawyers. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Cargage Co.*, 76 F.3d 114, 116 (7th Cir.

1996).  There is no indication in plaintiff's fee motion that plaintiff herself has made any payments to counsel for fees or costs.  Nor is this a case where the "success" has benefited plaintiff in any way.  She did not recover any additional benefits on either the discount rate or transition factor claims, and, since she cashed out her benefits in 1998 and has not been a participant in the plan since that time, there is no room to argue that she benefits from any changes in plan administration that might conceivably flow from the fact of the court's ruling on Phase I.

        The case law recognizes the public policy interest behind ERISA's fee provision, ensuring that ERISA participants can retain counsel to pursue meritorious claims.  But fee recoveries in ERISA class actions where plaintiffs obtain hundreds of millions dollars in additional benefits are often enormous, and the prospect of such awards is a powerful incentive for counsel to take on and litigate such claims.  In such a class action, with the potential for billions of dollars in additional benefits prevails, where plaintiff only achieves "some success" but neither plaintiff nor the class recover *any* additional pension benefits, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Spegon v. The  Catholic Bishop of Chicago*, 175 F.3d 544, 557 (7th Cir. 1999) (quoting *Hensley*, 461 U.S. at 435).  Thus, an appropriate award pursuant to the Court's October 20, 2010 ruling is not a million-dollar fee, but a far more limited amount.

## **CONCLUSION**

Plaintiff has failed to support her request for $2.5 million in fees. A reasonable fee for the limited portion of the litigation on which the court has concluded plaintiff achieved "some degree of success" should not exceed $500,000.

Respectfully submitted,

Defendants Verizon's Bell Atlantic Cash
Balance Plan and Verizon Communications, Inc.

By: /s/ Abigail A. Clapp
James G. Richmond (620637)
Abigail A. Clapp (6269540)
Greenberg Traurig, LLP
77 West Wacker Drive, Ste. 2500
Chicago, IL 60601
Tel. (312) 456-8400
Fax (312) 456-8435

Jeffrey G. Huvelle (admitted *pro hac vice*)
Covington & Burling LLP
1201 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel. (202) 662-6000
Fax (202) 662-6291

Dated: March 3, 2011