IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA N. YOUNG, on behalf of herself and a class of others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 05 C 7314<br>) |
| VERIZON'S BELL ATLANTIC CASH BALANCE PLAN and VERIZON COMMUNICATIONS, INC. | ) Magistrate Judge Denlow<br>)<br>) |
| Defendants. | )<br>) |

**REPLY IN SUPPORT OF PLAINTIFFS'**
**<u>MOTION FOR AWARD OF ATTORNEY'S FEES AND COSTS</u>**

<br>

Allen C. Engerman
Law Offices of Allen C. Engerman, P.A.
Sanctuary Centre
4800 North Federal Highway, Suite 100-D
Boca Raton, Florida 33431
(561) 392-2222

Jeffrey C. Engerman
Law Offices of Jeffrey C. Engerman, PC
11901 Santa Monica Blvd. # 700
Los Angeles, California 90025
(310) 207-7777

Arthur T. Susman
Matthew T. Heffner
Matthew T. Hurst
Glenn L. Hara
Susman Heffner & Hurst LLP
Two First National Plaza, Suite 600
Chicago, Illinois 60603
(312) 346-3466

Attorneys for Plaintiffs

Verizon's opposition brief plays a single note. It simply insists over and over that, because Verizon paid its lawyers less than Class Counsel's lodestar, Class Counsel's requested fee must be unreasonable. But Verizon's adjective-laden rhetoric is empty—it provides no support for its factual claims and it distorts the facts regarding the fees sought by Class Counsel.

The opposition brief uses two tactics. First, it tries to compare the overall numbers in a "broad stroke" analysis. The problem is that Verizon continues to use the wrong numbers for comparison purposes. It also tries to confuse the Court with frequent citations to the overall time Class Counsel spent in the litigation instead of the time related to Phase I, which was reduced by Class Counsel to account for their limited success and efficiency concerns. Second, Verizon cites a few examples it hopes demonstrate that Class Counsel's overall time must be excessive, inviting the Court to cut all of Class Counsel's time despite the absence of specific objections or arguments by Verizon as to any other tasks. This Monday morning quarterbacking should be ignored. Only the tasks Verizon has specifically argued against should be considered. Regarding these, most are untimely. The rest are either hypocritical or unwarranted.

At the end of the day, Verizon cannot escape the fact that this litigation involved billions of dollars in benefits and the fundamental question of whether plan administrators should have the power in the administrative process to unilaterally change unambiguous ERISA plan terms. Class Counsel won on that issue, securing greater rights for 14,000 participants, and Verizon is getting off easy with merely having to pay Class Counsel's fees for Phase I.

I.     **Class Counsel's fee motion adequately justifies the requested fee.**

Verizon's only real challenge to the requested fees is that it paid its attorneys less to defend Phase I than what Class Counsel is requesting for prosecuting it. In the first instance, that argument is legally irrelevant. *See Harkless v. Sweeny Indep. Sch. Dist., Sweeny, Tex.*, 608 F.2d

1

594, 598 (5th Cir. 1979); *CBS Broadcasting, Inc. v. Browning*, No. 06-22463, 2007 WL 2850527, at *8 (S.D. Fla. 2007). But even if the Court were to consider this comparison, it must do so on a true apples-to-apples basis, using the same method to determine the relevant lodestars for each set of lawyers. As Class Counsel demonstrated in their fee memorandum, Verizon's claimed lodestar figure of $565,208 for litigating Phase I, the appeal of Phase I, and the fee litigation was highly inaccurate and misleading. Covington's comparable lodestar is at least $1,437,088. Pls.' Mem. 4–7. Verizon does not dispute that calculation. Defs.' Opp. 1–20.

Instead, Verizon stubbornly continues to insist Class Counsel should be paid "less than $500,000," Defs.' Opp. 2, 20. That is the amount Verizon previously claimed Covington was paid for its defense on Phase I, the appeal, and this fee litigation. Pls.' Mem. Ex. B. But that time was artificially cut by Verizon's subjective allocation of some Phase I time to Phase II. Verizon has dropped the objection to any parsing of Phase I time, not even arguing it in its brief. Defs.' Opp. 1–20. When all of Covington's Phase I time is included—even using their old rates and a 15% discount—Verizon actually paid over double that, $1,022,335, for the relevant litigation. Pls.' Mem. 5–6. Verizon provides no justification why Class Counsel, who succeeded in Phase I, should be paid *less than half* what Covington was paid for losing.

And the actual paid time must be adjusted because it is based on old rates (including a 15% discount that Verizon has provided no reason should be applied to Class Counsel's rates). Once Covington's hours are adjusted to their current, undiscounted rates, the true comparable lodestar between the two sets of lawyers is $2.577 million to $1.437 million. Pls.' Mem. 6–7.[1]

---

[1] Verizon appears to have dropped its challenge to Class Counsel's billing rates. Defs.' Opp. 18. It does complain about the "inflation" of those rates over time, but Verizon's counsel's rates increased at an even greater rate over the course of this litigation, from $610 per hour to $760 for Mr. Huvelle (24.6% increase), from $340 to $500 for Mr. Sandstrom (47% increase), from $700 to $850 for Mr. Vine (21.4% increase), and from $285 to $450 for Mr. Pistilli (57.9% increase). Pls.' Mem. Ex. A. To the extent Verizon is requesting that the Court not use current rates, it is asking the Court to commit reversible error.

2

So Verizon's repeated assertion that the two figures differ "by a factor of three, four or five" is incorrect. Defs.' Opp. 18. The true comparable figures differ by a factor of 1.79—less than 2.

This difference is easily explained by the increased difficulty of overturning an administrative decision (as opposed to defending one) and by the substantial help Verizon received from outside professionals in litigating the case. Pls.' Mem. 8–9. On this basis alone, the Court should grant Class Counsel's fee request in its entirety.

Even if the Court finds that Class Counsel were too diligent and too careful on some tasks, though, the fee sought by Class Counsel would be justified by applying a modest lodestar enhancement in light of (1) the goals of the five-factor test for ERISA attorney's fees, especially "deterring" profoundly negligent plan drafting, and (2) the "undesirability of the case," *see Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 n.1 (7th Cir. 2009). Verizon does not dispute that the Court has discretion to make such an upward adjustment in this case. Defs.' Opp. 1–20. The Court should therefore apply a lodestar enhancement in its discretion. *See White v. City of Richmond*, 713 F.2d 458, 462 (9th Cir. 1983) (multiplier of 1.5, in part, due to "economic undesirability" of case).

II. **Verizon's specific objections are untimely, contrary to its request to treat this motion on a "broad strokes" basis, and unconvincing on the merits.**

Verizon's opposition raises a host of specific objections to Class Counsel's billing that have never before been voiced. For example, Verizon's arguments on pages 5–8 are not contained in its previous Local Rule 54.3 letters, which were supposed to lay out any specific objections to the fee motion, and so should be rejected.[2]

---

*See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Mathur v. Bd. of Trustees of S. Illinois Univ.*, 317 F.3d 738, 744–45 (7th Cir. 2003).

[2] Verizon also complains repeatedly that the redactions in Class Counsel's time records have somehow hindered its ability to raise objections. Defs.' Opp. 7 n.2, 8 n.4. Class Counsel have provided all the

Why Verizon is just now making such specific objections is puzzling. This is precisely the type of analysis that Verizon told the Court it was not interested in pursuing. Just one month ago, Verizon moved the Court to limit Class Counsel's fee motion to only 15 pages. At that time, Class Counsel informed the Court that they were unsure how to proceed because Verizon was refusing to comply with the Local Rules and provide specific line-by-line objections to Class Counsel's time. Ex. A, Hr'g Tr. 5, Feb. 9, 2011. Class Counsel candidly reported that a fee brief responding to these hundreds of objections[3] would be voluminous. *Id.* 5–6.

In response, Verizon's counsel proposed that, rather than analyzing Class Counsel's time "day-by-day, task-by-task," the Court should "come up with an overall number" using an "overall sense of what's appropriate." *Id.* 8. The Court agreed, stating that it would resolve the fee dispute "on a broader basis," *id.* 9, and in a "larger, more policy-oriented way," *id.* 11. As a result, the Court limited Class Counsel to 25 pages, which the Court instructed counsel to use to respond to the "broader strokes" of Verizon's general objections, and not to address "each day's work" in detail. *Id.* 18–19.

But now that Class counsel responded the way Verizon insisted, it has sandbagged them by alleging "day-by-day, task-by-task" objections to specific Phase I time entries not contained in its previous correspondence. *See, e.g.*, Defs.' Opp. 6–8. This about-face should be rejected. It is hypocritical, unfair, and untimely.

---

information required by the Local Rules and this Court, and Verizon has never requested more. If the Court needs more detail in analyzing the time entries, Class Counsel will provide them *in camera*. But an appeal to the Supreme Court is pending, and Class Counsel cannot voluntarily allow opposing counsel to view the work-product and attorney-client privileged information in their time entries.

[3] These objections consist of several "general objections," which Class Counsel easily rebutted in the fee memorandum. But they also contain objections in the form of a copy of Class Counsel's time entries with check marks made line item by line item next to the entries Verizon deems appropriate, with the understanding that Verizon objects to any entries not checked off. There are no specific objections tied to those unchecked entries, making it impossible for Class Counsel to meaningfully respond.

4

Moreover, as argued below, Verizon's specific objections are baseless.

### A. Verizon's belated specific objections with respect to Phase I are baseless.

Verizon identifies only three tasks on which it claims Class Counsel spent an unreasonable amount of time. Generally, such "nit-picking from the outside and in hindsight . . . provides no basis for disallowance" of fees. *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering, Inc.*, No. 03-6867, 2008 WL 728897, at *4 (N.D. Ill. Mar. 18, 2008). It's more difficult to decide in the middle of litigation what will and won't be important in seeking discovery, briefing, and convincing a judge on a particular issue. But even putting that aside, Verizon's hindsight nit-picking is unwarranted.

First, Verizon argues that 19 hours spent drafting and revising the Rule 30(b)(6) notice was excessive. Defs.' Opp. 6. Verizon's only support for this assertion is that the notice contained "just ten topics" and was "routine." *Id.* But that simply isn't so. Class Counsel never treated the 30(b)(6) notice at issue as routine. They drafted an 11-page notice, complete with specifically tailored definitions, with several strategic issues in mind. This was Class Counsel's only chance to depose Verizon itself. Class Counsel had to determine the topics of examination and how they affected key elements of the case. Potential designees were identified and topics were tailored accordingly. Numerous documents from a cache of 50,000 pages were reviewed to prepare the areas of inquiry. Definitions were carefully crafted to match the issues in the notice so there could be no assertion of confusion at the deposition. Moreover, the notice is not merely "10 topics." Some topics have multiple subparts, one with 11 different sub-areas of examination. Since Verizon objected to every single discovery request ever issued, it is not surprising that Class Counsel paid a great deal of attention to the details of the notice.

5

Second, Verizon argues Class Counsel's time briefing and arguing the Phase I trial on the papers was excessive because it was more than Covington's. Defs.' Opp. 7. But it makes sense that Class Counsel spent more time here. They were trying to overturn an administrative decision, not uphold it under deferential review. Also, it is comparatively easy to assert in a single paragraph, as Verizon did, that the Seventh Circuit treats ERISA drafting mistakes as "ambiguities" that can be interpreted away, relying on a single case: *Mathews v. Sears Pension Plan*, 144 F.3d 461 (7th Cir. 1998). Defs.' Mem. Liability [DE 115] at 33. It is much more difficult and time-consuming to thoroughly canvass the Seventh Circuit caselaw and synthesize those cases to demonstrate that drafting errors are *not* treated as ambiguities, as Class Counsel did in a combined 12 pages of briefing. *See* Pls.' Opening Br. [DE 111] at 44–50; Pls.' Resp. Defs.' Mem. Liability [DE 118] at 14–20. That is why Plaintiffs ultimately won this point. *Young v. Verizon's Bell Atl. Cash Balance Plan*, 575 F. Supp. 2d 892, 914 (N.D. Ill. 2008). Similarly, Plaintiffs briefed issues of extrinsic ambiguity and what qualifies as "objective" evidence much more extensively than Verizon, DE 111 at 44–56, and addressed Verizon's lack-of-authorization and reformation affirmative defenses, *id.* 59–64, while Verizon did not, *see* DE 115.

Third, Verizon asserts that Class Counsel's efforts on the motion to compel decided November 28, 2007, was "not time well spent" since Verizon agreed to respond to those requests. Defs.' Opp. 7. Verizon forgets, though, that it "agreed to respond" to the discovery at issue *only after* it had refused to do so in the required Rule 37 conference and *only after* the motion to compel was filed. Furthermore, this was not a routine motion to compel. Plaintiffs' briefs [DEs 90 & 94] had to demonstrate as a matter of law *why* it was necessary to inquire into the equitable considerations surrounding Verizon's affirmative defenses, which required discussing the legal authorities regarding undue delay/laches, unconscionable hardship, and gross

6

negligence. As far as Class Counsel could determine, this was the first motion of its kind in the history of ERISA. Class Counsel stand behind the time they spent researching and briefing these equitable issues.[4]

### B. Verizon's objections to the appeal time are baseless.

Despite spending three full pages[5] in its brief regarding Class Counsel's appeal time, Verizon does not make a single substantive objection other than "No client would pay an attorney in private practice $205,000" to defend this cross-appeal in "just 18 pages." Defs.' Opp. 15. Yet this statement is not supported by anything. One would think someone at Verizon or one of Covington's other Fortune 500 clients could attest to this point if it were true. But there is no declaration or peer-reviewed study or even a news article to support this bold statement. Instead, the Court is just supposed to take Verizon at its word.

Verizon's unsupported objection also raises a number of unanswered questions. Why does the fact that Class Counsel was able to boil down the response to Verizon's arguments into 18 pages make them less deserving of a fee? That certainly doesn't fit with Verizon's concern that Class Counsel weren't efficient enough. Second, if the cross-appeal were really as meaningless and unworthy of attention as Verizon suggests, why did Verizon hire former Solicitor General Paul Clement of King & Spaulding to represent it in the Supreme Court and file a cross-petition for certiorari seeking to overturn Phase I? And why has Verizon refused to

---

[4] Verizon also complains that Class Counsel had five attorneys present for the oral argument (which lasted two hours) and seek $8,497.50 for their combined 16.6 hours to prepare for and attend the motion. Defs.' Ex. D. But Covington billed Verizon almost twice as much—$15,849—for both Mr. Huvelle and Mr. Sandstrom to attend the same argument. *See* Pls.' Mem. Ex. F [DE 276-7] at 7400.

[5] Verizon continues its campaign of confusion by highlighting the *total* time Class Counsel spent on the appeal to the Seventh Circuit, instead of the amount *actually requested* . Defs.' Opp. 14. For some reason, Verizon thinks spending nearly a million dollars on an appeal of a case that its own estimates value at over $1 billion is unreasonable. Again, Verizon provides no support for this proposition, let alone a reason the total figure is relevant to the $205,000 Class Counsel are actually seeking for the cross-appeal.

turn over King & Spaulding and Covington's time entries and bills for the Supreme Court work directly related to its continued appeal of Phase I, in contravention of the Local Rule? Does it not want this Court to know how much it spent on its Supreme Court appeal?

### C. Verizon's new objections to the fee time are baseless.

Verizon now asserts that time incurred in the fee litigation *after* the Court's ruling of October 20, 2010, should be reduced in proportion to the amount of the fee awarded. Defs.' Opp. 17. That objection assumes that, if their fee request were only smaller, Class Counsel would not have had to do the same amount of work on this motion, for example, collecting time entries, redacting them, and arguing with Covington about the scope of the October 20 opinion. But that isn't the case.

Verizon rejected the Court's invitation to conduct a baseball-style arbitration (while Class Counsel accepted) and rejected Class Counsel's proposal for the Court to hold a settlement conference to mediate this matter. Verizon has stubbornly refused to treat the fee question as anything other than full-blown litigation, and that is its right. But it should pay Class Counsel for forcing them through this folderol and requiring this motion to proceed. Class Counsel would have had to expend the same amount of time preparing their records and this motion no matter what amount the Court awards.

## CONCLUSION

Class Counsel deserve to be paid every dollar they have requested. Their fee memorandum explains in great detail the results they obtained for the class and the work it took to obtain those results and defend them on appeal. Verizon's opposition fails to rebut that showing, and the Court should award the requested fees and costs in full.

Respectfully submitted,

*/s/ Matthew T. Heffner*